367 So.2d 762 (1979)
STATE of Louisiana, Appellee,
v.
Frankie SEPULVADO, Appellant.
No. 62622.
Supreme Court of Louisiana.
January 29, 1979.
*763 Mark H. Kramar, Leesville, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for appellee.
TATE, Justice.[*]
This appeal involves judicial review of a criminal sentence for excessiveness in accordance with Article 1, Section 20 of the Louisiana Constitution of 1974.
The defendant, Frankie Sepulvado, was convicted for a violation of La.R.S. 14:80 (1950), carnal knowledge of a juvenile. The trial court sentenced him to serve three years and six months at hard labor.
This court affirmed the conviction on appeal, but vacated the sentence on the ground that the trial court had failed to comply with the sentencing guidelines of La.C.Cr.P. art. 894.1. State v. Sepulvado, 359 So.2d 137 (La.1978). The case was remanded to the trial court for resentencing in accordance with the statute.
The trial judge held an evidentiary hearing. He again sentenced Frankie Sepulvado to serve three years and six months at hard labor. At the resentencing, the judge stated certain facts as the basis for his conclusion that the prison sentence was necessary, in an effort to comply with La.C.Cr.P. art. 894.1 (1977). The defendant now appeals the sentence, arguing primarily that the sentence was excessive under the *764 circumstances, and thus violative of La.Const. Art. 1, Section 20.

I.
Frankie Sepulvado, an unmarried young man, 18 years of age at the time of the episode, and Jamie S., a 15½-year-old unmarried girl, went riding in his car on the evening of April 1, 1977. In the early morning hours of the next day, according to her testimony, they had sexual intercourse.
Jamie and Frankie, who are not closely related, had known each other for about four years prior to that time. In the days before this incident, they had been planning to run away together. On the evening of April 2, they did go to Texas, staying for about two weeks before responding to messages from Jamie's parents entreating them to return to Sabine Parish, Louisiana, where they both lived. There was testimony that Jamie's mother had promised to permit the couple to marry if they returned.
On arriving in Zwolle, Frankie was arrested and charged with violating La.R.S. 14:80 (1950), carnal knowledge of a juvenile. The statute then provided in pertinent part:
"Carnal knowledge of a juvenile is committed when anyone over the age of seventeen has sexual intercourse, with her consent, with any unmarried female person of the age of twelve years or over, but under the age of seventeen years, where there is an age difference of greater than two years between the two persons.. . .
"Whoever commits the crime of carnal knowledge of a juvenile shall be imprisoned, with or without hard labor, for not more than five years."[1]
At the time of the offense, Frankie Sepulvado was 18 years and 23 days old. Jamie S. was 15 years and nine months old. Jamie testified that she was a virgin prior to the incident in question. Nothing in the record suggests that their sexual act was anything other than the voluntary act of two equally willing and infatuated teenagers.
Under these circumstances, we must consider whether a sentence of three years and six months imprisonment in the state penitentiary system, is an excessive sentence as imposed on the one party who is unquestionably the only one legally at fault under the statute.

II.
The Louisiana Constitution of 1921 merely prohibited "cruel and unusual punishment." Article I, Section 12. In a deliberate change of wording, the new Louisiana Constitution of 1974 broadened the constitutional provision (and the duty of our courts in review of sentences) by providing, Article I, Section 20: "No law shall subject any person . . . to cruel, excessive, or unusual punishment." (Italics ours.)
The deliberate inclusion of a prohibition against "excessive" as well as "cruel and unusual" punishment adds an additional constitutional dimension to judicial imposition and review of sentences. By it, the excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court. See La.Const. art. 5, Section 5(C).
In addition to deliberate change in the constitutional wording, the constitutional intent reflected by the additional constitutional prohibition against "excessive" punishments may also be deduced from the historical jurisprudential gloss given to the former constitutional prohibition against punishments merely "cruel and unusual", as well as from the legislative history within the constitutional convention of the adoption of Article 1, Section 20, which is entitled "Right to Humane Treatment."

III.
The Eighth Amendment to the federal constitution prohibits "cruel and unusual" punishments. It was long ago held that *765 excessiveness[2] was a factor to be considered in determining whether a punishment was within the constitutional prohibition of that clause. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). However, later cases gradually subsumed the excessiveness element within the other, more literal tests for determining whether the "cruel and unusual" standard was violated, giving rise to a general rule against appellate review for excessiveness per se.
See, e. g., Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); Comment, Appellate Review of Sentences and the Need for a Reviewable Record, 1973 Duke L.J. 1357 (1973).
Nevertheless, the federal appellate courts gradually developed a number of devices, such as discerning the absence of support in the record for the sentence, or a failure to exercise discretion given the trial judge by statute, to effect review of outrageous sentences. Comment, cited above, at 1973 Duke L.J. 1360-1370.
Commentators have generally urged appellate review for excessive sentences as the better rule. See Id., esp. authorities cited at 1973 Duke L.J. 1357 n.5; Hopkins, Reviewing Sentence Discretion: A Swift Method of Appellate Action, 23 U.C.L.A. L.Rev. 491 (1976); Comment, Appellate Review of Sentences: A Survey, 17 St. Louis U.L.J. 221 (1972); Note, Appellate Review of Sentencing Procedure, 74 Yale L.J. 378 (1964). Either by statute or by judicial decision, such review became available in at least twenty-six states. See Comment, cited above at 17 St. Louis U.L.J. 232.

IV.
In Louisiana, under article I, Section 12 of our former constitution of 1921, which tracked the language of the Eighth Amendment, this court declined to review sentences for excessiveness. See, e. g., State v. Polk, 258 La. 738, 247 So.2d 853 (1971).
To determine that the adoption of the Louisiana Constitution of 1974 effected a change in the law on this point, it might not be necessary to go beyond the basic principle of constitutional construction that no word should be treated as mere surplusage. Nevertheless, additionally its legislative history supports the view that the new constitutional provision was intended to provide appellate review of sentences for excessiveness.
The convention floor debate transcripts reflect that Delegate Weiss had been assigned as the floor manager for the section on the Right to Humane Treatment. Documents of the La.Const'l Convention of 1973 Relative to the Administration of Criminal Justice 929-30 (La.Const'l Records Comm'n). Delegate Willis asked him if the clause would "not allow me to appeal and have the judge review a sentence on the grounds that the sentence is excessive and so the punishment is excessive?" Delegate Weiss answered "yes," but suggested that "an amendment is forthcoming in this regard." Records of the La.Const'l Convention of 1973: Convention Transcripts 1190 (44th day Proceedings, Sept. 8, 1973) (La.Const'l Records Comm'n); Documents, cited above, at 690. The clause was never amended, however; and the availability of individual sentence review stands as intended within the original wording.
Comprehensive law review commentaries by two of the leading figures of the constitutional convention, written shortly after the adoption of the 1974 constitution, also underscore this fundamental change in the law.
Professor Lee Hargrave of the Louisiana State University law school faculty served as the coordinator of legal research for the Constitutional Convention of 1973. He directed research for the committee on the Bill of Rights and Elections. In discussing this provision of the new constitution, Professor Hargrave states in his article, "The Declaration of Rights of the Louisiana Constitution of 1974", 35 La.L.Rev. 1, 63 (1974):
*766 "The prohibition against cruel or unusual punishment is derived from the eighth amendment and Article I, § 12 of the 1921 constitution. The new section, however, adds that no law shall subject any person to `excessive punishment,' broadening the prior prohibition against `excessive fines'. This gives the courts, in the exercise of their judicial review power, a basis for determining that sentences, whether fine, imprisonment or otherwise, though not cruel or unusual, are too severe as punishment for certain conduct and thus unconstitutional. It is a basis for extending the court's control over the entire sentencing process."
One of the co-authors of the Constitutional Convention's Declaration of Rights, now Article I of the Louisiana Constitution of 1974, State Representative Louis "Woody" Jenkins, wrote in "The Declaration of Rights", 21 Loy.L.Rev. 9, 39 (1975):
"The prohibition against `excessive . . . punishment' makes a great change in the law and requires the courts to do justice in each case, regardless of any legislative assertion. This standard allows the courts to avoid strained interpretations of what is cruel and unusual punishment, in order to reach the sometimes more important question of whether the punishment does, in fact, fit the crime. For example, it is much easier to find that imposition of the death penalty is excessive as punishment for such crimes as rape and kidnapping than that it is cruel or unusual. . . . Mandatory penalties are particularly suspect because they frequently have no relation to the magnitude of the offense."

V.
It may be argued that Section 20 scrutiny of the punishment meted out under a law must be limited to the Facial constitutionality of the penalty provisions. However, under the federal Eighth Amendment, "[i]t is also settled that the proscription of cruel and unusual punishments forbids the judicial imposition of them as well as their imposition by the legislature. Weems v. United States, 217 U.S. 349, 378-82, 30 S.Ct. 544, 553-555, 54 L.Ed. 793." Furman v. Georgia, 408 U.S. 238, 241, 92 S.Ct. 2726, 2728, 33 L.Ed.2d 346 (concurring opinion).
The constitutional provision was entitled the "Right to Humane Treatment" by the constitutional delegates, thus at least implying its intended protections of individuals against any excessive punishment by state action. Its legislative history at the constitutional convention likewise indicates that its purpose is to prevent any person from being subjected to excessive punishment: While the section provides literally that "no law shall subject" any person to such punishment, this phrasing was due partly to considerations of style, and partly to the desire of some delegates to clarify the scope of the prohibition against euthanasia, also dealt with in section 20. See detailed summary of legislative history in State v. Williams, 340 So.2d 1382, 1386-87 (La.1977) (concurring opinion). (Actually, every imposition of a statutory punishment is done by a law, notwithstanding the interposition of a judge as the law's instrument.)

VI.
In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise his sentencing discretion to impose sentences gradated according to the individualized circumstances of the offense and of the offender.
In the case of La.R.S. 14:80; for instance the legislature entrusted to the judge a wide range of sentencing discretion: probation (supervised or not), suspended sentence or not, imprisonment in the parish jail or in the penitentiary system, sentences from one day up to five years.[3]
Thus, under some circumstancessuch as the prior history or criminal dispositions of a certain offender, the particular helplessness *767 of a certain victim, or a particularly vicious method of committing the crimethe maximum penalty under the statute might clearly be justified; while the same punishment might be considered excessive if applied to a more typical offender who commits the crime under less gross circumstances.
For instance, a penitentiary sentence of the maximum five years might easily be justified for a mature man who had seduced a frightened and confused twelve-year-old girl, under circumstances falling just short of rape, and who had exhibited similar behavior in the past but showed little hope of reformation. Yet such a penalty might be excessive if applied to a love-struck teenager, of otherwise umblemished character and record, who commits the offense in the course of a teenage romance.
The appellate enforcement of the constitutionally intended prohibition of excessivenessof punishment disproportionate to the offensemust therefore be something more than the passing on the constitutionality of a statute penalty in a vacuum devoid of content concerning the circumstances of the crime and of the offender. This is not to gainsay that the trial judge is given a wide discretion in the imposition of sentence within statutory limits, that the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion, and that great weight must be given to his factual characterizations of the aggravating and mitigating circumstances justifying more severe punishment.

VII.
We thus find that the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this court on appellate review of his conviction.
The general purposes of sentence review include the development and application of criteria for sentencing and the promotion of respect for the law by increasing the fairness and by correcting abuses of the sentencing power. See American Bar Association Standards for Criminal Justice Relating to Appellate Review of Sentences, Standard 1.2 (1968); see also ABA, Standards Relating to Sentencing, Alternatives and Procedures, Standards 7.1-7.5 (1968). These purposes are obviously intertwined. Respect for the law will increase if the courts are able to point to articulable criteria to justify sentencing disparities (both between offenders sentenced in the same court and offenders sentenced in different courts).
In many of the twenty-odd jurisdictions with sentence review, on a case by case basis the jurisprudence evolved the standards whereby trial judges may avoid the imposition of excessive sentences, and whereby the appellate court reviews sentences alleged to be excessive, while nevertheless preserving judicial efficiency, fairness to the defendant, and appropriate deference to the trial court's proper exercise of its wide discretion.
Fortunately, in Louisiana, our legislature has announced standards which, properly applied, will supply much of the protection against excessive sentence to which a defendant is entitled under Article I, Section 20 of the constitution. By Act 635 of 1977 the legislature Article 894.1 to our Code of Criminal Procedure, it has provided by statute certain criteria which may justify a sentence of imprisonment and certain other criteria which, while not controlling the sentencing judge's discretion, must be given weight in favor of suspending the sentence of a defendant or placing him on probation rather than sentencing him to custodial confinement.[4] Analogically, these criteria provide *768 guidance as to whether the sentence should be closer to the maximum rather than to the minimum statutory range of sentence, if the sentencing judge does indeed determine that imprisonment rather than suspension of sentence or probation is the appropriate disposition.
The standards provided by the statute are similar to those evolved in other American jurisdictions, including those in which sentence review is an established feature of the administration of criminal justice. The standards of La.C.Cr.P. art. 894.1 are, in fact, identical to those recommended by the American Law Institute's Model Penal Code, Section 7.01 (1962), an acknowledgedly comprehensive and authoritative statement of principles formulated after extensive consultation and studies founded on American experience.[5] Other studies of American sentencing practices and goals have recommended or ascertained similar principles for the sentencing decision.[6]
*769 Accordingly, we find that the statutory criteria legislatively provided by La.C.Cr.P. art. 894.1 (1977), which are similar to those evolved by courts in other American jurisdictions with a constitutional or statutory duty to review excessiveness, provide appropriate criteria by which to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives.

VIII.
La.C.Cr.P. art. 894.1(C) provides that the trial court shall state for the record the considerations taken into account and the factual bases therefor in imposing sentence. This, of course, is an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. See Comment, Appellate Review of Sentences and the Need for a Reviewable Record, 1973 Duke L.J. 1357, 1370-76.
The trial judge in the present instance afforded the defendant, upon the remand, a sentencing hearing at which he permitted the introduction of showings as to sentence-influencing factors and consideration. We commend him for so doing, since this helpful practice avoids remands to determine the basis of the sentence, see, e. g., State v. Segers, 357 So.2d 1 (La.1978) and State v. Underwood, 360 So.2d 173 (La.1977), is fundamentally fair in affording the accused an opportunity to rebut or explain unfavorable facts, and may well be the most appropriate and expeditious mechanism to explain the context in which the wide sentencing discretion of the trial court is to be exercised.[7]
Due to the wisdom of the present trial judge in providing the defendant a sentencing day in court, we are able to review without further remand the defendant Sepulvado's contention of sentence excessiveness on its merits.

IX.
In resentencing Frankie Sepulvado on remand from this court, the trial court relied upon as circumstances indicating imprisonment was appropriate (1) its view that any punishment less than a prison sentence would "deprecate the seriousness of the offense," La.C.Cr.P. art. 894.1(A)(3), and (2) its belief that Sepulvado's past conduct indicated that he might commit another crime during the period of probation or suspended sentence, La.C.Cr.P. art. 894.1(A) (1), and (3) its assumption that the defendant was in need of correctional treatment or a custodial environment, La.C.Cr.P. art. 894.1(A)(2), in order to become a responsible member of society.
Having found that imprisonment was justified by any one of the factors it found to be present, the court did not feel it necessary "to individually negate the eleven (11) suspension, or probation, considerations" in La.C.Cr.P. art. 894.1 B. Tr. 109.
If, as the trial court implied, imprisonment is mandated because the statute indicates imprisonment "should" be imposed if any one of the aggravating circumstances is found to exist, this is an erroneous construction of the statute. We find no intent to shackle the sentencing discretion of the trial judge in this regard, especially since the very next sub-section of the statute provides that certain mitigating factors "shall be accorded weight in its [the trial court's] determination of suspension of sentence or probation." La.C.Cr.P. art. 894.1 B.
By reason of the constitutional prohibition against excessive sentences provided *770 by Article 1, Section 20, the sentencing judge does not possess unbridled discretion to impose a sentence within statutory limits, regardless of mitigating facts. Considering the nature and circumstances of this crime, as well as the youth and background of this offender, the present trial court abused its discretion by refusing to consider the numerous factors within the statutory criteria provided by La.C.Cr.P. art. 894.1 B (see footnote 4 above) which strongly indicate that no imprisonment at all be imposed, even in the local parish jail (let alone three and one-half years in penitentiary confinement).
Moreover, it is fairly clear that two of the aggravating factors found by the trial court are not of such a factual nature as to be considered an aggravating factor within the meaning of the statute,[8] and it is at least doubtful that the third factor could be so characterized either.
The trial court primarily relied upon an incident of Frankie Sepulvado's past conduct, in determining that he was in need of correctional treatment, or of confinement because he might otherwise during the period of probation commit a similar offense. The only past conduct to which the judge referred, aside from the offense for which convicted, was that Frankie had had sexual intercourse with another girl, whom he later married.
The facts of the prior incident merit discussion, because they weighed heavily in the trial judge's conclusions.
In early 1976, about a year prior to the offense for which he was convicted, Frankie Sepulvado had sexual intercourse with the girl who later became his wife. The trial court stated, apparently in error, that Frankie was over seventeen at the time, and noted that the girl was fifteen, thus implying that this, too, was a criminal act.
The court estimated Frankie's age from his wife's testimony that the sexual intercourse had occurred in March of 1976, and from the fact that a baby was subsequently born to the girl on November 25, 1976. Frankie did not become seventeen, however, until March 10, 1976. Estimating from the birth of the baby, it would seem that the sexual intercourse occurred either during February or during the very early days of March, when Frankie was not yet seventeen.
In any case, since the girl was fifteen, it was most unlikely that she was fully two years younger than Frankie, and therefore it is highly improbable that this incident amounted to a prior instance of criminal conduct.
The judge emphasized that the girl had become pregnant, had given birth to Frankie's child, and that they later married. None of these developments renders the initial act of sexual intercourse more culpable.
The fact that Frankie's child was born in November 1976 does bear unfavorably on his conduct during the offense for which he was convicted, which occurred several months later. However, he was still unmarried *771 at the time of the offense, and the record does not reflect what had happened between him and the mother of his child. Given the wide range of possibilities, many of which would not imply fault on his part, and some of which might even help to explain his rushing into a relationship with Jamie, the fact of his one former teenage romance, standing alone, does not justify an assessment of Frankie as an unusually likely recidivist, nor as a dangerous criminal.
At the evidentiary hearing, evidence of several statutory mitigating factors was presented:
(a) The victim of the defendant's criminal conduct induced or facilitated its commission. See article 894.1(B)(5). There was testimony that the girl had asked Frankie to go away with her several times before the night of the offense; that they had gone to elaborate lengths to meet one another on prior occasions; that after the night of the offense, she actually did voluntarily go away with him for two weeks; and that both parties had willingly participated. Although this does not legally excuse Frankie, it should have been taken into consideration on the question of sentencing.
(b) The defendant had no history of prior delinquency or criminal activity, and had led a law-abiding life for a substantial period of time before the commission of the instant crime (and also after the crime). See article 894.1(B)(7). Uncontroverted testimony showed that Frankie's reputation in the community, aside from this crime, was good. Indeed, the pre-sentence report, according to the trial judge, showed that Frankie was a good risk for a probation sentence. He had no prior criminal record. His conduct after the crime, in that he got married and obtained steady work, tends to negate the suggestion of likely recidivism.
(c) The imprisonment of defendant would entail excessive hardship to his dependents. See art. 894.1(B)(11). Frankie Sepulvado is the sole support of his wife and child.
(d) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense. See art. 894.1(B)(4). It is important to remember that this concept is not the same as justification in a legal sense. Frankie Sepulvado was guilty of the crime for which he was convicted. Nevertheless, for the purpose of determining which offender gets the maximum (five-year) sentence, and which gets a short sentence or probation, it is necessary to consider the context in which the illegal conduct occurred.
It is a fact that many young people, male and female, engage in sexual intercourse. In 1976, 2.7% of all 16-year-old girls in the United States, and 6.4% of all 17-year-olds, had borne at least one child. U. S. National Center for Health Statistics, Vital Statistics of the United States, Table 1-17 (1978). About half of these children were illegitimate. Id., Tables 1-32. These statistics, including those on abortions (331 reported for every 1000 live births, U. S. Department of Commerce, Bureau of the Census, Statistical Abstract of the United States 56 (1977)), indicate that a great number of unmarried 15- and 16-year old girls have engaged in sexual intercourse resulting in pregnancy and suggest that a greater number have done so without pregnancy.
Without applauding the sexual permissiveness of the times, we can only note that in the social context of the times this type of offense between young people is committed many times without criminal prosecution and that, in ordinary sentencing practice, it is not regarded as so serious as to require imprisonment. See XI below and see footnotes 5 and 6 above.
With regard to the community and individual context of this offense, the uncontroverted testimony at the evidentiary hearing was that marriage at about age 16 is not uncommon in Sabine Parish, the place of the offense.
The girl (Jamie S.) was almost 16 years of age when the offense took place. Frankie Sepulvado had just had his eighteenth birthday. Thus he was about a year over the seventeen-year age limit prescribed by La.R.S. 14:80 for the offender in carnal knowledge, and she was about a year under *772 the age limit prescribed for the victim. Since the statute requires, as an additional element of the crime, a two-year gap in the ages of the two parties, this conduct would not have been criminal if Jamie had been four months older or Frankie four months younger.
The context that emerges is of two young people, of marriageable age in their community, and of an age at which sexual experimentation is not uncommon, carrying on a relationship that was normal and predictable at least up to the night of the offense. They had known each other for four years, and the difference of about two years in their ages was not significant. At the trial there was testimony that they both believed they were in love.

X.
Nevertheless, the conduct in which they mutually engaged does subject Frankie to criminal punishment under La.R.S. 14:80. However, that statute is also designed to punish a wide range of other offenders.
Frankie was sentenced to serve three years and six months at hard labor, a penalty very near the maximum of five years. (What penalty, then, should be given to a thirty-year old man who seduces a twelve-year-old child, perhaps a relative who does not yet know the facts of life?)
Frankie was given three and one-half years at hard labor despite the fact that he is (with the sole exception of this offense) a responsible member of his community, with no prior record, a job, a family, and a favorable pre-sentence report indicating unlikelihood of recidivism. (What sentence then is to be given to an irresponsible drifter with a prior record (outside the scope of the multiple offender statute), who is judged a likely recidivist?. And suppose it is this irresponsible drifter who seduced a naive twelve-year-old girl?)
To give Frankie Sepulvado a sentence so near the statutory maximum, thus leaving only a negligible gap between his punishment and the penalty for the same crime committed in aggravated circumstances by a mature individual is to "deprecate the seriousness" of the latter offense rather than of Frankie's conduct.

XI.
Under the nature and circumstances of this case, the sentence of Frankie Sepulvado to imprisonment is clearly excessive. The aggravating circumstance, if any, is so clearly and greatly outweighed by the mitigating circumstances which point to a suspended sentence or probation.
We are re-enforced in this view by the sentencing principle applied in numerous other jurisdictions (see footnotes 5 and 6) that probation rather than imprisonment is appropriate for sexual misconduct between consenting teenagers.
We are further re-enforced in this view by statistics furnished us by the state department of corrections as to all persons convicted of violations of La.R.S. 14:80 (carnal knowledge) who (as of January, 1979) were under confinement in its institutions or under probation supervision by it.[9] These statistics show that of the 65 persons within institutional or probational custody of the department, only 8 had been given prison sentences. Of those imprisoned, the youngest was 20 years of age (for an offense committed May 24, 1978), and most imprisoned offenders were substantially older. Of the 57 under probational supervision, only 12 were under 20 years of age.
These 65 persons include only those whose violations were deemed serious enough to require either institutional confinement with the department or else supervised probation by it. They do not include the offenders given suspended sentences or probation without supervision. The statistics themselves do not indicate the aggravating circumstances which influenced the sentencing judge to find imprisonment appropriate in those cases in which the offender was sentenced to imprisonment.
*773 Nevertheless, the statistics do indicate that, despite the widespread violations of the statute among young people suggested by the earlier social statistics cited, not one individual under the age of 20 has been sentenced to imprisonment with the Department of Corrections as of the date this opinion is written.
By any available standard, the sentence of Frankie Sepulvado to imprisonment with the Department of Corrections for three and one-half years is clearly excessive.[10]

Conclusion
The imposition of a prison sentencein this case three and one-half years at hard labor for a teenaged defendantis so inappropriate that it represents a clear abuse of the trial court's sentencing discretion which violates the defendant's right against excessive punishments, La.Const. art. 1, section 20.
The present offense is less serious than other crimes punishable by penitentiary imprisonment, and even than the range of other conduct punishable under the same statute. Nor is there any evidence that a prison term would help to "reform" Frankie Sepulvado, who is now a responsible member of the community. To send him to prison would impose a burden on his dependents, andgiven the realities of prison lifewould involve a risk of serious harm to the development of his character.
There is nothing on the record to justify a deviation from the normal practice of giving young first offenders under La.R.S. 14:80 probation and/or a suspended sentence. Further, circumstances do not indicate that any suspended sentence should be of an extended nature, or to Department of Corrections rather than to the parish prison, nor that the period of supervised probation, if any, should be for any extended period of time. We take into consideration that the offender has already been confined in the parish prison for a very short period before release on bail.

Decree
The sentence of the trial court is set aside, and the case is remanded for resentencing in accordance with the views herein expressed.
SENTENCE SET ASIDE; CASE REMANDED FOR RE-SENTENCING.
SUMMERS, C. J., dissents.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting)
La.Const. art. 1, § 20 (1974) provides that "[n]o law shall subject any person . . . to cruel, excessive, or unusual punishment." (emphasis added). Hence, I consider that our review is limited to whether the "law" subjects any person to excessive punishment, not whether a sentence in a particular case is excessive. Accordingly, I respectfully dissent.
NOTES
[*] BLANCHE, J., not participating.
[1] After the offense was committed, the statute was amended to increase the maximum imprisonment to ten years. Act 539 of 1977.
[2] The concept was that a sentence was "`so disproportionate to the offense as to constitute a cruel and unusual punishment.'" Weems, cited in text, at 30 S.Ct. 549.
[3] In 1977, the maximum sentence imposable was increased to ten years, see footnote 1, but the sentencing judge was still given the wide discretion as to what type and length of sentence was imposed on the particular offender. The 1977 enactment is not applicable to the present case, since enacted subsequently to the commission of the present crime.
[4] As enacted by the 1977 legislature, La.C.Cr.P. art. 894.1 provides:

A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.
[5] The mitigating criteria are marked similar to those which the English courts evolved during their long experience with sentence review in order to promote fairness and some consistency in sentencing. The English courts have developed detailed guidelines and standards. See D. Thomas, Principles of Sentencing 170-202 (1970).

This authoritative study of the English jurisprudential standards also includes a study of the principles applicable to the range and type of sentence for particular types of crimes, noting the factors found to be influential by the reviewing court, for instance, in reducing the sentence from confinement to probation or instead in upholding the sentences as imposed. As to unlawful sexual intercourse with young girls, Id. pp. 113-17, the study notes that the court "tends to make a clear distinction between cases which involve the exploitation of an immature girl by an older man, and cases of sexual experimentation or displays of mutual affection between adolescents. In cases of the latter kind, the offense is not considered particularly serious, and the Court generally considers that a modest fine or discharge [from any sentence or supervised probation] is considered appropriate." Id., p. 113.
[6] See, e. g., American Bar Association Standards for Criminal Justice Relating to Sentencing Alternatives and Procedures, Standards 2.2, 2.3(c), 2.4(c), and 2.5(c) and commentary (n) to Standard 2.5(c) (1968); Dawson, Sentencing (American Bar Foundation Administration of Criminal Justice Series) 79-99 (1969).

It is of some interest that, with regard to the present crime, Dawson's 1969 study indicates the national American practice in sentencing to be similar to the English (see footnote 5) under circumstances similar to the present: "Probation is the likely disposition of statutory rape cases in which the age difference between the male and female is not great and she was clearly a willing participant." Dawson, cited above, at p. 91.
For an excellent bibliography of published books and articles on all aspects of sentencing, including those now before the court, see J. Ferry and M. Dravitz, Issues in Sentencing: A Selected Bibliography (National Institute of Law Enforcement Criminal Justice, Washington, 1978). See also W. S. Carr and V. J. Connolly, Sentencing Patterns and Problems: An Annotated Bibliography (American Judicature Society, Chicago, 1973) and R. C. Hand and R. G. Singer, Sentencing Computation Laws and Practice: A Preliminary Survey (American Bar Association Commission on Correctional Facilities and Services, Washington, 1974).
[7] The nature and function of the sentencing hearing, which need not necessarily be a full evidentiary proceeding, is discussed by us in State v. Bosworth, 360 So.2d 173 (La.1978).
[8] Under the facts of this case, to be set forth below, this young offender was no more in need of correctional treatment or custodial environment than would be any other young offender of good background and without prior record convicted of a nonviolent crime.

The ABA Standards for Criminal Justice Relating to Sentencing Alternatives and Procedures (1968) explain the purpose of the second improperly found aggravating factor as follows: The factor "would authorize imprisonment on the ground that a contrary disposition would unduly depreciate the seriousness of the offense. The theory underlying commitment on such a basis is similar to the idea of general deterrence, and yet more limited in effect. For certain offenses, such as embezzlement from a bank, the failure to impose a prison sentence might be unduly encouraging to similar attempts in the future and might destroy the confidence of the public in the system. Incarceration on such a theory might also be justified in the case of a particularly heinous murder, even though it was reasonably clear that the offender would not be likely to commit future offenses and that special treatment was unlikely to have any particular effect." Standard 2.5(c)(iii), as explained by Commentary (n). That the present is not regarded as this type of offense, except in gross exceptions, is indicated by the usual sentencing pattern of probation or suspended sentence, see footnotes 5 and 6, and Louisiana experience to be noted in text below at XI of this opinion.
[9] These statistics are included in an appendix to this opinion, which will not be published with this opinion but which will remain a public record of this court.
[10] The defendant also attempted to introduce evidence that suspended sentences that had been imposed for the two other recent convictions for the offense. Upon the state's objection, this evidence was incorrectly held to be irrelevant. I Wigmore on Evidence, Section 4(8) (3d ed. 1940); cf., La.Sup.Ct. Rule 28 (Rule 905.9.1), Section 4(b)(i) (1978).