ON REHEARING
Before HALL, FRED W. JONES, SEXTON, NORRIS and LINDSAY, JJ.
HALL, Chief Judge
We granted a rehearing in this case to reconsider our original decision that the state failed to prove by clear and convincing evidence that “there is no reasonable expectation of reformation on the part of the parent” or that the parent “[has] shown no significant substantial indication of reformation and [is] unlikely to reform” as required by LSA-R.S. 13:1601A.(3) and 1601B.(2).
The state contends that the parent’s conduct was so aberrant that an inability to reform can be inferred from her conduct. It is argued that the record shows no remorse on the parent’s part, only denial, indicating no reasonable expectation of reformation. The state points out that no serious efforts at rehabilitation can be made because the parent is in prison.
Reconsideration convinces us that the state’s position is well-taken, in spite of the failure of the DHHR to adequately address evaluation and rehabilitation of the parent. The circumstances of this case are such that reuniting the children with their mother and reformation of the mother is unlikely and unrealistic.
The extent of the abuse inflicted upon the children with the parent’s tolerance or participation is reflected in the record of the criminal proceeding, admitted into evidence by stipulation of the parties, and is described in our unpublished opinion on the appeal from sentencing in that proceeding, a copy of which is attached hereto.
The evidence of the abuse of the children by the parent, the parent’s lack of remorse, the children’s fear of the parent and their long-term emotional damage as testified to by the psychologist, and the lack of any real opportunity for rehabilitation or reformation during the several years the parent will be in prison for her criminal acts against the children, clearly and convincingly establishes that there is no reasonable expectation of reformation and that the parent has shown no significant indication of reformation and is unlikely to reform.
For these reasons, and those expressed in our original opinion on other aspects of the case, the original decision of this court reversing the judgment of the district court is set aside, and the judgment of the district court terminating parental rights is affirmed.
AFFIRMED.
NORRIS, J., dissents for reasons contained in the original opinion and for additional reasons assigned.
*552 APPENDIX
NOT DESIGNATED FOR PUBLICATION.
Rules 2-16.2 and 2-16.3, Uniform Rules, Courts of Appeal
Nos. 19,305-KA, 19,306-KA, 19,307-KA, 19,308-KA
Court of Appeal
Second Circuit
State of Louisiana
Jan. 20, 1988
State of Louisiana Plaintiff-Appellee versus JD and WDB Defendants-Appellants
State of Louisiana Plaintiff-Appellee versus WDB Defendant-Appellant
Appealed from the Fourth Judicial District Court for the Parish of Ouachita, Louisiana; Honorable Michael S. Ingram, Judge.
Wright and Parker By: Daniel P. Parker, Attorneys for WDB.
Hunter, Scott, Blue, Johnson & Ross By: Louis Scott, Larry D. Jefferson, Attorneys for JD.
William J. Guste, Jr., Attorney General, William B. Faust, III, Assistant Attorney General, James A. Norris, Jr., District Attorney, Kathy R. McCoy, Assistant District Attorney, Attorneys for Appellee.
Before HALL, FRED JONES and NORRIS, JJ.
HALL, Chief Judge
Defendant JD was charged by bill of information with two counts of cruelty to juveniles in violation of LSA-R.S. 14:93, one count of aggravated rape in violation of LSA-R.S. 14:42 and one count of aggravated crime against nature in violation of LSA-R.S. 14:89.1. She was also charged, in an unrelated incident, with middle grade theft in violation of LSA-R.S. 14:67 and felony theft in violation of LSA-R.S. 14:67. Pursuant to a plea agreement, JD pled guilty to one count of indecent behavior with juveniles in violation of LSA-R.S. 14:81 and one count of middle grade theft in violation of LSA-R.S. 14:67. All of the other charges against JD were dismissed. The trial judge sentenced JD to serve five years at hard labor on the indecent behavior with juveniles charge and two years at hard labor on the middle grade theft charge, with the sentences to be served consecutively. Both of the sentences imposed were the maximum allowable for the crimes that defendant pled guilty to. JD appeals as excessive the sentences imposed.
Defendant WDB was charged by bill of information with two counts of cruelty to juveniles in violation of LSA-R.S. 14:93, one count of aggravated rape in violation of LSA-R.S. 14:42 and one count of aggravated crime against nature in violation of LSA-R.S. 14:89.1. He was also charged, in unrelated incidents, with two counts of middle grade theft in violation of LSA-R.S. 14:67, simple burglary in violation of LSA-R.S. 14:62 and a number of misdemeanor offenses. Pursuant to a plea agreement, WDB pled guilty to two counts of attempted cruelty to juveniles in violation of LSA-R.S. 14:93, LSA-R.S. 14:27; one count of middle grade theft in violation of LSA-R.S. 14:67; one count of misdemeanor theft in violation of LSA-R.S. 14:67, and one count of attempted simple burglary in violation of LSA-R.S. 14:62, LSA-R.S. 14:27. All of the other charges against the defendant were dismissed. The trial judge sentenced Berry to serve five years at hard labor on each of the two counts of attempted cruelty to a juvenile, two years at hard labor on the middle grade theft charge, six months imprisonment without hard labor on the misdemeanor theft charge and six years at hard labor on the attempted simple burgla *553 ry charge, with the sentences to run consecutively. The sentences imposed were the maximum allowable for the crimes that defendant pled guilty to. WDB appeals as excessive the sentences imposed. WDB also complains that the trial judge considered hearsay information when sentencing him.

Facts

JD and WDB had been living together for approximately three years when the incident leading to their arrest for the physical abuse of JD’s children occurred. On January 31, 1986, the defendants left TY and JY in the care of one of WDB’s cousins while they went on a trip. WDB’s cousin took the children to the home of Della Childress, one of JD’s relatives. While in Mrs. Childress’s care, TY complained of a backache. Mrs. Childress’s examination of the child revealed severe bruises extending from the lower back to the lower thighs. An examination of JY by Mrs. Childress revealed bruises similar to TY’s. Mrs. Childress reported the children’s injuries to the authorities and an investigation led to the arrest of JD and WDB on charges of cruelty to juveniles.
In a statement given on February 5,1986 to officers of the Ouachita Parish Sheriff’s office, WDB explained that he and JD had agreed that he would be the main person to discipline the children. He admitted whipping the children because they had brought home report cards from school which showed failing grades. WDB stated that the spankings were administered with a wooden paddle that was 12" to 18" long, about 4" wide and approximately ¾" thick. WDB explained that he had made the paddle himself approximately four to five months before the report card incident. He stated that the reason he made the paddle was because the two inch wide belt he had previously been using on the children caused welts that lasted overnight. He changed to the paddle to keep from “bringing anything up on them.”
WDB admitted to striking TY and JY four to six times each with the paddle during the report card incident but stated that the children were clothed and that the spankings did not leave bruises on them. He stated that he did not know how the bruises got on the children. He stated that JD was present when these spankings occurred. WDB also admitted to spanking the children with the paddle two or three weeks previous to this occasion for “not minding” and to making them stand and face the wall for 30 to 40 minutes as a form of punishment. Subsequent to the recording of this statement, WDB told Ouachita Parish Sheriff’s detectives Jay Via and Renee Smith that he has hit TY and JY more than twenty times each, losing control three or four times to the point of leaving marks on the children. He also admitted to hanging TY up from ropes attached to beams on the front porch of his residence for at least one hour. He also admitted to forcing the children to run as a means of discipline. He stated that JD was afraid to stop him because he hit her as well. He also admitted using “acid” and marijuana.
As a result of the physical abuse charges brought against JD and WDB, TY and JY were removed from the home. A physical exam conducted by Dr. Meade P. O’Boyle on February 4, 1986 revealed that JY had multiple bruises on his buttocks, legs and thighs. JY told Dr. O’Boyle that WDB had hit him with a belt and a paddle on Thursday January 30, 1986. Dr. O’Boyle’s impression was that JY had been both abused and neglected. He also stated that JY described for him how a marijuana cigarette was rolled and smoked and that JY stated that JD and WDB made him puff on a pot cigarette. The doctor also noted that JD described what “acid” was and where it is placed on the tongue.
Dr. O’Boyle’s physical examination of TY revealed multiple old healing bruises on her buttocks. TY told Dr. O’Boyle that WDB had hit her with a belt and paddle on Thursday January 30, 1986. She also told Dr. O’Boyle that WDB had beat her on multiple occasions and that JD and WDB “smoked pot” and shared cigarettes with her. She described to Dr. O’Boyle how a marijuana cigarette was rolled and how JD and WDB used “acid”.
*554 In April, 1986, TY and JY began making comments which indicated that they had been sexually abused. The children were again interviewed and physically examined by Dr. O’Boyle. During the interview JY indicated that WDB had anal intercourse with him “lots of times”, that he had to perform oral sex on WDB and that WDB performed oral sex on him. Dr. O’Boyle’s physical examination revealed old, healed, lacerations of the anus. JY stated that JD attempted to have intercourse with him, that he had to perform oral sex on JD, and that she performed it on him as well. JY’s statements indicated that TY had been subjected to intercourse and other forms of sexual abuse also. He stated that JD put a stick in TY’s vagina.
TY told Dr. O’Boyle that JD and WDB made her and JY watch them engage in sexual intercourse on many occasions and that then WDB would tell JY to put a stick into TY’s vagina. She also indicated that she performed oral sex on WDB and that he put both a stick and his fingers in her vagina. She stated that whenever WDB did anything to her sexually, JD was watching. TY also stated that WDB’s brother was involved in sexually molesting her. Dr. O’Boyle’s physical examination of TY indicated that her hymen was not intact. She confirmed that JY had performed oral sex on JD while WDB watched.
These allegations by the children of sexual abuse led to the rearrest of JD and WDB for the offenses of aggravated rape and aggravated crime against nature.
The unrelated theft charges against the defendants arose from the theft of two trolling motors and batteries. The burglary charge against WDB arose from the burglary of a grocery store. At the time that he pled guilty, WDB admitted to taking the trolling motor and battery and to breaking into and stealing merchandise from the grocery store. He also admitted to mistreating or neglecting the children stating that he was too hard on them and that he had watched pornographic films in front of them. He did not, however, admit to sexually abusing the children.

Sentences

Both defendants appeal contending that their sentences were excessive. WDB also argues that his sentence was inconsistent with the guidelines set out in LSA-C.Cr.P. Art. 894.1.
It is well settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983) writ denied 439 So.2d 1074 (La.1983); State v. Brooks, 431 So.2d 865 (La.App.2d Cir.1983).
As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through plea bargain and the offense involves violence upon a victim. State v. Richardson, 446 So.2d 820 (La.App.2d Cir.1984).
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C. Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied 439 So.2d 1074 (La.1983). Secondly, the reviewing court must determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
A sentence is unconstitutionally excessive in violation of La. Const.1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or *555 nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
Before pronouncing sentence on the defendants, the court detailed the allegations of physical and sexual abuse made by the children against the defendants. It then noted the details of the plea agreement and the benefits accruing to the defendants as a result of the agreement. The court stated that it was aware that the defendants denied the allegations of sexual abuse. The court noted that when the authorities took custody of the children they were in a filthy and unkept state and that both children had bad colds which appeared to be untreated. The court also noted that both children had 27 unexcused absences from school as of February 13, 1986.
The court noted that both JD and WDB were first felony offenders and therefore eligible for probation or suspension of sentence but stated that he had considered all of the eleven factors under Article 894.1 as' to each defendant and that none of the factors was in their favor.
The court noted that JD dropped out of high school in the eighth grade at the age of 15 and that she apparently later ran away from home and had no residence for a while until her grandmother brought her to Louisiana. The court noted that she was 26 years old, had been married and was either separated or divorced, and had been living with WDB for approximately three years prior to her arrest.
The court noted that WDB was 21 years old, that he had dropped out of school in the seventh grade at the age of sixteen. The court also noted that the report did not show that either of the defendants had been abused themselves as children.
The court stated that consideration of probation for JD was heavily outweighed by her criminal conduct. The court noted the trauma the children had experienced and stated that there was undue risk that the JD would commit another crime during probation or a suspended sentence. The court also found that JD was in need of correctional treatment and that a more lenient sentence would deprecate the seriousness of her crimes. The court noted that JD admitted stealing the trolling motor and battery.
The court also noted that WDB admitted the burglary and the two thefts and that he admitted acts of physical cruelty to the children.
The sentencing guidelines of Art. 894.1 were followed by the court in articulating both defendants’ sentences. The maximum sentences were justified and were not excessive given that both defendants’ potential exposure was substantially reduced by the plea bargains. In JD’s case it was reduced from life plus 37V2 years to 7 years and in WDB’s case it was reduced from life plus 53V2 years to 18¥2 years. Additionally, the offenses the defendants pled to do not adequately describe the seriousness of the offenses they committed, either those admitted by defendants or those disclosed by reliable information contained in the pre-sentence investigation report which was not traversed other than by defendants’ denial of sexual abuse and implausible explanation of the children’s knowledge of such matters.
WDB also contends that the trial court erred in considering unsworn hearsay information beyond the scope of the crimes to which defendant pled guilty and in sentencing defendant as though he had pled guilty to greater offenses. WDB’s allegation that the trial court considered hearsay information when sentencing him apparently refers to information contained in the pre-sentence report.
It is well-settled that the sentencing judge may consider evidence of other offenses in determining a sentence and may rely on references to other offenses contained in pre-sentence investigation reports. State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983) writ denied 435 So.2d 438 (La.1983).
*556 Hearsay information is inherently necessary in the concept of a pre-sentence investigation and report. State v. Waller, 519 So.2d 301 (La.App. 2nd Cir.1988), decided this same day. While the fundamental precepts of due process require that a criminal defendant be afforded an opportunity to rebut or explain prejudicial or erroneous information in a pre-sentence report, a full scale evidentiary hearing is not required in a sentencing hearing where the defendant is given an opportunity to traverse or explain the allegedly false information. La. C.Cr.P. Art. 875; LSA-R.S. 15:574.12; State v. Parish, 429 So.2d 442 (La.1983).
In this case, WDB did not assert the right to traverse any erroneous information other than by his denial of sexual abuse and implausible explanation. He merely contends that the trial judge considered unsworn hearsay information beyond the scope of the crimes to which defendant pled guilty and sentenced defendant as though he had pled guilty to a mere serious offense. The record clearly shows that the trial judge was aware that WDB did not admit to the allegations of sexual abuse. In a per curiam opinion filed after the sentencing hearing, the trial judge stated that the alleged sexual abuse had nothing to do with WDB’s sentence and explained that the only reason he read certain portions of the pre-sentence report into the record was to satisfy the requirement that the sentence be particularized. The trial judge added that the physical abuse admitted to by the defendant and its lasting and long-term effect on the children was enough to convince the court that the maximum sentences were justified. Under these circumstances defendant’s claim is without merit. The completed offenses which the defendant admitted he actually committed, including physical cruelty of juveniles and burglary, justify the sentences imposed. Although the trial court disclaimed consideration of the alleged sexual abuse, the information of such abuse was reliable enough to warrant consideration thereof in the sentencing process.
The total sentences imposed on the defendants are not excessive for the totality of their criminal conduct. Accordingly, defendants’ convictions and sentences are affirmed.
AFFIRMED.
NORRIS, Judge, dissenting.
I respectfully dissent for the reasons expressed in the original opinion. Additionally, I make the following comments. This case is concerned with the issues of burden of proof and strict adherence to a statute that seeks the drastic remedy of irrevocably terminating a parent’s rights to her children. The majority finds, in a most conclusory manner, that the
evidence of abuse of the children by the parent, the parent’s lack of remorse, the children’s fear of the parent and their long-term emotional damage is testified to by the psychologist, and the lack of any real opportunity for rehabilitation or reformation during the several years the parent will be in prison * * * clearly and convincingly establishes that there is no reasonable expectation of reformation and that the parent has shown no significant indication of reformation and is unlikely to reform.
This finding lacks, in my opinion, a true evidentiary basis in this record which is saturated with unreliable hearsay.
All that this record proves beyond a reasonable doubt concerning abuse is that this parent watched pornographic movies in the presence of her children, smoked marijuana in their presence, and failed to prevent her boyfriend from administering excessive punishment. No other allegations of abuse are proved beyond a reasonable doubt. The legislature has decreed that the state must prove by clear and convincing evidence both (1) abuse of the child, amounting to cruel and inhuman treatment below a reasonable standard of human decency and (2) parental unfitness and no reasonable expectation of reformation on the parent’s part. We should not infer from the abuse proved beyond a reasonable doubt that there is clearly and convincingly no reasonable expectation of reformation. The state offered no proof as to this essential element of the statute.
*557 I believe we have a duty, even at the risk of being branded an “accessory after the fact” [1] by the state, to require it to meet its burden of proof in accordance with the statutory mandate of LSA-R.S. 13:1603 B.

. “Whereby, this Honorable Court would become an accessory after the fact if it failed to terminate the parental rights’ [sic] of the appellant.” State’s brief in support of rehearing, p. 3.