| iNORRIS, Judge
The State appeals a juvenile court disposition holding that La. Ch.C. art. 897.1, which imposes mandatory “juvenile life” for juveniles adjudicated delinquent for aggravated rape, La. R.S. 14:42, is unconstitutional as applied to A.A.S. Article 897.1 requires the placement of such juveniles in a secure juvenile facility until age 21, without benefit of parole, probation, suspension of imposition or execution of sentence, modification or furlough. The juvenile court, however, sentenced A.A.S. to 4$ years in secure detention (until approximately age 18}é) and made him eligible for nonseeure placement, parole and release. For the reasons expressed, we reverse and remand with instructions.

Factual and procedural background

The victim in this case is 11-year-old R.T. On November 5,1996 R.T.’s mother reported that her daughter had been raped earlier that day. A.A.S., who was 13 at the time, was initially a suspect, but investigators ultimately charged his older brother, D.S., and another juvenile in the November 5 incident.
Investigators also learned, however, that another incident had occurred several days earlier, on October 31. R.T. testified that *321 she had known A.A.S. for about two years; A.A.S. came to her house a few times, and they would sit and talk in the living room. (A.A.S. testified R.T.’s father once asked him to leave.) They got more familiar, and on October 31 he asked R.T. to have sex with him. She agreed, and both testified it was consensual. However, R.T. testified that after about two minutes, it started to hurt; she tried to push him away, but he would not quit. Finally he stopped, calling her a “child bitch.” A.A.S. denied she told him to stop and that he called her a name; he insisted he used no force or violence in the encounter.
I ¿The State charged A.A.S. with aggravated rape of a person under the age of 12. La. R.S. 14:42 A(4). At an adjudication hearing in January 1997 the court found A.A.S. guilty as charged. Prior to disposition, counsel filed a motion to quash, urging the mandatory sentence provision of Ch.C. art. 897.1 A was unconstitutional as applied to the case. At the close of the disposition hearing (which involved both A.A.S. and his brother, D.S.) the court ruled as follows:
With respect to A.A.S., the Court does find that article 897.1 A as applied to A.A.S. under this case would violate the 14th and 8th amendments of the United States Constitution, and in particular would violate fundamental notions of fairness by mandating a secure placement until the child turns 21.
In determining the disposition of A.A.S., the Court has considered that the removal of the child from the custody of his parents is necessary for the child’s welfare as well as the safety and protection of the public. And the court finds that the child’s welfare and safety and protection of the public cannot be adequately safeguarded without removal of the child from his parents.
The Court considers the disposition to be imposed by the Court in AA.S.’s case to be the least restrictive disposition which the Court finds is consistent with the circumstances of this case, the needs of this child, and the best interest of society. The Court does believe that there is an undue risk that during a period of any immediately suspended commitment or probation that there would be an undue risk that the child would commit another crime.
The Court is particularly concerned that this particular child is in need of correctional treatment and that a custodial environment is the most appropriate setting within which to provide for the correctional treatment and rehabilitation of the child. The Court also believes that a lesser disposition than that contemplated by the Court would deprecate, or make light of, the seriousness of the child’s delinquent act.
The Court is also mindful of in rendering this disposition Article 900 B which provides that if an order of commitment to the custody of the Department of Public Safety and Corrections is subsequently modified and the child is placed on parole, the maximum term of parole shall be the remainder of the sentence originally imposed.
The Court commits A.A.S. to the custody of the Department of Public Safety and Corrections for a period of four and a half years Rwith recommendation for secure placement.[1] The Department of Public Safety and Corrections is specifically ordered and shall regard the provisions of Article 897.1 A as not applying to A.AS. And the department shall regard A.AS. as eligible for institutional recommendations for nonsecure placement, parole, or release in accordance with its customary practice in cases in which Article 897.1 does not apply. R.pp: 264-265 (emphasis added; footnote not in original).
The State filed a writ application directly to the Supreme Court, which transferred the matter to this court. At our direction the juvenile court converted the case to an appeal.

Applicable law

The Louisiana Constitution gives the courts of the State, in the exercise of their judicial power, a basis for determining that sentences, by fine, imprisonment or otherwise, though not cruel or unusual, are too severe as punishment for certain conduct and thus unconstitutional. La. Const. Art. 1, *322 § 20; State v. Sepulvado, 367 So.2d 762 (La.1979), and citations therein. Consequently, the imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional rights against excessive punishment. State v.Sepulvado, supra. The excessiveness vel non of a sentence is a question of law reviewable under the court’s appellate jurisdiction. Id.; State v. Dorthey, 623 So.2d 1276 (La.1993).
A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, supra, and citations therein.
Dispositions after felony adjudications are regulated by the Children’s Code. The juvenile court is required to impose the least restrictive disposition authorized by the code which is consistent with the circumstances of the case, the |4needs of the child, and the best interest of society. Ch.C. art. 901 B. However, the general disposition guidelines do not apply when a child has been adjudicated a delinquent for the violation of aggravated rape. Ch.C. art. 901 E. Disposition rules for aggravated rape and other enumerated felonies are set forth in art. 897.1:
A. Notwithstanding any other provision of law to the contrary, after adjudication of a felony-grade delinquent act based upon a violation of R.S. 14:42, aggravated rape, * * * the court shall commit the child to the custody of the Department of Public Safety and Corrections to be placed within a secure detention facility until the child attains the age of twenty-one years without benefit of parole, probation, suspension of imposition or execution of sentence, modification, or furlough.
The purpose of this subsection is to remove the juvenile court’s discretion to impose a lesser sentence than juvenile life for the enumerated felonies. State in Interest of T.J.T., 97-0335 (La.App. 4 Cir. 4/9/97), 692 So.2d 1385.

Discussion

In brief the State concedes that the juvenile judge must impose the least restrictive sentence, in accord with art. 901 B. The State argues, however, that the court gave no explanation of why the application of art. 897.1 A, i.e., imposition of juvenile life, violated A.A.S.’s constitutional rights; the disposition overlooks the evidence of A.A.S.’s “long history of physical violence connected to sexual exploitation” and “trouble with school authorities and the police on a frequent basis.” The State concludes that under the circumstances, the court abused its discretion in disregarding the mandatory sentence of art. 897.1 A.
A.A.S. concedes in brief that the juvenile court did not state the findings which influenced its disposition. He suggests, however, that the record as a whole will support the court’s action: no force or coercion was employed in the commission of the offense; the victim was physically larger than A.A.S., and appeared to be his same age; and A.A.S. has no prior felony-grade adjudications. He also argues that in her initial statement to the police, the victim referred to |sA.A.S. as her “boyfriend,” a characterization she denied at the disposition hearing. He argues the evidence suggests that the victim may have initiated the incident, a conclusion supported by A.A.S.’s statements to the police and testimony. A.A.S. also disputes any significant prior history of sexual misconduct or exploitation. He concludes that the juvenile court was well within its discretion to impose fk years in a secure facility rather than juvenile life for a young man who committed “a single act of intercourse where there was no suggestion of force, where the parties to the act appeared of age with one another, and under circumstances which suggest that the young girl initiated the sexual contact.” Br., 3.
This case bears a certain resemblance to State v. Sepulvado, supra. Sepulvado, 18 years old at the time, took his 15$-year-old girlfriend on a drive one evening; early the next morning, they had sexual intercourse. The record showed that the incident was completely voluntary, and in fact the couple had been planning, for about some four months, to “run away together,” and they *323 actually did so for a brief period after the incident. The girl’s mother apparently promised to let them get married if they would come back. Sepulvado was charged with carnal knowledge of a juvenile, La. R.S. 14:80; he was convicted and sentenced to 3/á years at hard labor. The Supreme Court extensively reviewed the facts, noting (1) the victim induced or facilitated .the offense, (2) the defendant had no history of prior delinquency or criminal activity, and (8) imprisonment of the defendant would result in hardship to his wife and child. The court also found “substantial grounds tending to excuse or justify the conduct” in that, statistically and “without applauding the sexual permissiveness of the times,” large numbers of unmarried 15- and 16-year-old girls engage in this conduct without criminal consequences. The court concluded that the sentence was a clear abuse of discretion and did nothing to “reform” the defendant.
|6The Supreme Court’s methodology in Sepulvado establishes that a close factual analysis must be made before declaring a sentence within statutory limits to be unconstitutionally excessive. This court has observed that methodology when the issue has been seriously presented. See, e.g., State v. Smith) 485 So.2d 112 (La.App. 2 Cir.1986); State v. Winston, 567 So.2d 1131 (La.App. 2 Cir.1990) (dissenting opinions), rev’d 572 So.2d 54 (1991); State v. Edwards, 575 So.2d 902 (La.App. 2 Cir.1991); see also State v. Vampran, 459 So.2d 1333 (La.App. 1 Cir. 1984).
The Supreme Court reaffirmed this methodology in State v. Dorthey, supra. Dorthey, a 27-year-old crack addict, was arrested for possession of cocaine, R.S. 40:967, convicted and sentenced to five years at hard labor. The State later billed him as a multiple offender, R.S. 15:529.1, citing three prior convictions for possession of cocaine. As a fourth offender, he faced a minimum sentence of 20 years at hard labor, which the district court imposed, rejecting Dorthey’s motion to quash for unconstitutionality. The Supreme Court found that given Dorthey’s condition as an addict, the minimum sentence would likely make “no measurable contribution to acceptable goals of punishment.” The court declined to hold § 529:1 unconstitutional, but remanded the case to the district court for resentencing and the possible finding that 20 years for Dorthey may be excessive. 623 So.2d at 1281.
The Supreme Court has most recently reaffirmed these principles in State v. Johnson, 97-1906 (La.3/3/98), 709 So.2d 672. Although the precise issue in Johnson ("as in Dorthey) was the mandatory minimum sentence of R.S. 15:529.1, the court clearly required the sentencing judge to “articulate specific reasons” for imposing a sentence under the statutory limit. The majority also held that ^legitimate instances of sentences below the statutory limit are “rarely presented.” Id., at p. 9.[2]
Applying the rationale of Sepulvado, Dor-they and Johnson to the instant case, we are constrained to find that the mitigating factors and considerations that weighed so heavily in those decisions are not sufficiently compelling to support the instant disposition.[3] The victim may have “initiated” the encounter but is not capable of consenting to it. State v. Jamison, 93-1633 (La.App. 3 Cir. 5/4/94), 640 So.2d 438, writ denied 94-1439 (La.10/7/94), 644 So.2d 631, and citations therein. While A.A.S. had no juvenile felony record, he had a prior adjudication for simple battery arising from an incident which, according to the predisposition report, involved an element of sexual battery;[4] he had extensive behavioral problems at school, resulting in a Family In Need of Services action in juvenile court; and there was mixed testimo *324 ny concerning Ms attitude and conduct outside of school. A.A.S.’s background is hard to square with the “law abiding life for a substantial period of time” that was ameliorating in Sepulvado. A.A.S.’s discipline record is, in our view, disturbing. Further unlike Sepulvado, this case does not suggest that sex between 13- and 11-year-olds is societally condoned or frequently unpunished.
Unlike the situation in Dorthey, the mandatory sentence is not grossly out of proportion to the gravity of the conduct. Aggravated rape of a person under the age of 12 is a crime which, when committed by an adult, carries a mandatory life 1 gsentence and the possibility of a death sentence. R.S. 14:42 D(l)(a); State v. Wilson, 96-1392 (La.12/13/96), 685 So.2d 1063. Because A.A.S. is a juvenile, his mandatory sentence is juvenile life, or approximately 7/6 years from the date of disposition. Ch.C. art. 897.1. Finally, as in State v. Johnson, supra, the juvenile court failed to articulate sufficient rationale that tMs is a truly “rare case” that warrants the exceptional declaration of unconstitutionality. Our own review simply does not support that judgment.
After careful review of the record facts, and following the methodology outlined above, we do not find that the imposition of juvenile life for this offense and offender will make no measurable contribution to his rehabilitation or that it would be a needless and purposeless infliction of pain and suffering. When all the facts are weighed and balanced, the disposition mandated by art. 897.1 does not shock our sense of justice. The juvenile court erred in finding this article unconstitutional as applied to A.A.S.

Conclusion

For the reasons expressed, the disposition of the juvenile court is reversed. The case is remanded for the entry of a judgment of disposition consistent with Ch.C. art. 897.1 and with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.

. At the time of adjudication and disposition. A.A.S. was 14 years old.

. This observation was quoted from Justice Marcus’s concurrence in State v. Dorthey, supra.

. We are also concerned about the juvenile judge’s omission of, or failure to state for the record, the facts that motivated his opinion. The judge’s specific reference to Ch.C. art. 900 B, relative to "misdemeanor grade adjudication,” is particularly perplexing.

.According to the predisposition report, this incident began when A.A.S. grabbed the victim’s buttocks; she fought back, and A.A.S. struck her in the head with a brick. A.A.S. denied grabbing the girl’s buttocks, and claimed the fight started because she stole his bike. (R.T.'s father testified that A.A.S. was prone to steal bikes). A.A.S. was charged with battery and committed to the Department of Public Safety and Corrections for six months.