I THIBODEAUX, Judge.
Dwain Michael Jones appeals from a twenty-year sentence at hard labor not subject to diminution for good behavior after entering a manslaughter plea in the death of his minor daughter. We find that the trial court abused its discretion in excessively sentencing the nineteen-year-old offender who did not physically harm his daughter but was negligent in failing to prevent abuse by the mother and in failing to seek medical assistance for the child. Furthermore, we conclude that pursuant to ULa-B.S. 556.1(A)(1), it is reversible error to fail to inform an accused of the nature of the charge against him and the minimum and maximum penalties provided by law before accepting a plea of guilty. Accordingly, we reverse and remand the case for resentencing.
I.

ISSUES

We must decide:
1) whether sentencing under the manslaughter statute was proper;
2) whether the twenty-year sentence imposed by the trial court against the defendant was excessive; and,
3) whether the mandatory ten-year without benefit of probation or suspension of sentence, the minimum sentence of La.R.S. 14:31(B), is applicable to the defendant.
II.

FACTS

In the early part of 1995, while living with his father in Michigan, seventeen-year-old Dwain Michael Jones met and began a relationship with Amy Zee Yang, age fifteen. As a result of that relationship, Aspen Yang was born on November 5, 1995. Amy abused her daughter, Aspen, and Amy was being investigated by the Child Protection Agency of Michigan. During that time, the Jones family came to live in Avoyelles Parish, and Dwain, Amy and Aspen moved to Louisiana to reside with Dwain’s parents. Amy continued to abuse Aspen, and Dwain fought with Amy over her abusive behavior.
During August of 1997, Dwain witnessed Amy throw the twenty-two-month-old Aspen to the ground on two occasions. Following these events, Dwain |sobserved Aspen’s confused behavior and lack of coordination and was unable to get her to respond to him or to her toys. Fearing that the State would remove Aspen from his household or that Amy would abscond with the child, Dwain did not inform the authorities or seek medical care for Aspen. Between the hours of 10:30 a.m. and 1:30 p.m. on September 2, 1997, Aspen sustained injuries resulting in bruises around the eye, a small cut to the upper right eye, an abrasion over the left eye, abrasions to the leg, and serious breathing problems. Dwain came upon the scene at 1:30 or 1:35 p.m. and found the child in distress. Aspen died on September 3, 1997. The trial court determined that her death was due to child abuse while in the custody of Dwain and Amy.
The State of Louisiana charged Dwain and Amy with first degree murder in the death of Aspen. Both pleaded not guilty to first degree murder and subsequently entered guilty pleas to the reduced charge of manslaughter. Following a sentencing hearing, the trial court on October 27,1998 found that Amy Yang’s actions fit the criteria for second degree murder, and he sentenced her to a maximum forty-year sentence under the manslaughter statute. The court found no evidence indicating that Dwain had “committed any physical *600 abuse, battery or physical pain and suffering upon his child,” but found him “extremely negligent in Ms parenting of Aspen.” In his Reasons for Sentencing, the trial judge stated that Dwain’s conduct fit the definition of “child desertion” and “cruelty to juveniles” and that his greatest crime was “abandonment” of his child “in her greatest hour of need.” The trial judge found the manslaughter statute applicable and sentenced Dwain to twenty years imprisonment not subject to diminution for good behavior.
At the end of sentencing on October 27, 1998, counsel for the defendant objected to the sentence imposed, assigned error, moved for appeal and indicated that |4he would file a motion to reconsider the sentence. The motion was timely filed on November 25, 1997, and was denied by the trial court.
III.

LAW AND DISCUSSION

Standard of Review
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. Code Crim.P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of La.Code Crim.P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2 Cir.), writ denied, 521 So.2d 1143 (La.1988).
The second step of the inquiry requires an examination of the case and the background of the defendant. A sentence is unconstitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock one’s sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial judge has wide discretion in the imposition of sentence witMn 1 sthe statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983). The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Cook, 95-2784 (La.5/31/96); 674 So.2d 957, cert denied, 96-6329 (12/16/96); 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539.
Assignments of Error
Dwain Michael Jones contends that:
1) the trial court erred in imposing an unconstitutionally excessive sentence in this case in light of appellant’s youth, lack of prior criminal history, and his limited involvement in the death of his daughter;
2) the trial court erred in that it considered the negligence of appellant under a misdemeanor statute as sufficient for a sentence justified by manslaughter, rather than for conduct more appropriately viewed as negligent homicide.
In the interest of clarity, we will review the assignments of error in reverse order.
Sentencing Under the Manslaughter Statute
The defendant contends that the trial court erred in not viewing his conduct *601 appropriate for sentencing as negligent homicide rather than manslaughter. Manslaughter is defined in pertinent part at La.R.S. 14:31(A) as follows:
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 [first degree murder] or 30.1 [second degree murder], or of any intentional misdemeanor directly affecting the person, (emphasis added).
A felony is defined at La.R.S. 14:2 as:
1„(4) “Felony” is any crime for which an offender may be sentenced to death or imprisonment at hard labor.
The trial court found that Dwain’s actions constituted “child desertion” and “cruelty to juveniles,” both of which are punishable by imprisonment. Child desertion, as noted by the defendant, is a misdemeanor. It is not punishable by imprisonment at hard labor. More specifically, the statute on child desertion, La.R.S. 14:93.2.1, provides in pertinent part as follows:
A. Child desertion is the intentional or criminally negligent exposure of a child under the age of ten years, by a person who has the care, custody, or control of the child, to a hazard or danger against which the child cannot reasonably be expected to protect himself, or the desertion or abandonment of such child, knowing or having reason to believe that the child could be exposed to such hazard or danger.
B. (1) Whoever commits the crime of child desertion shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.
However, cruelty to juveniles is a felony. The statute on cruelty to juveniles, La.R.S. 14:93, provides in pertinent part as follows:
A. Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child.
[[Image here]]
D. Whoever commits the crime of cruelty to juveniles shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than ten years, or both.
It is well-settled in our jurisprudence that the imposition of a jail sentence as punishment for a crime punishable by imprisonment “with or without hard labor” does not reduce the crime from a felony to a misdemeanor, as the defining characteristic is that punishment which might have been inflicted. State v. Brown, 185 La. 855, 171 So. 55 (1936).
IvHence, based upon the foregoing, the actions of cruelty by neglect of Dwain Jones in failing to stop the abuse upon Aspen by Amy, and in failing to seek medical assistance, constitutes a felony because it is punishable by imprisonment with or without hard labor. Under La.R.S. 14:31(2)(a), the felony of cruelty to a juvenile is punishable under the manslaughter statute if it is not enumerated in the first and second degree murder articles, which it is not. Therefore, having found the elements of cruelty, the trial court did not err in sentencing Dwain Jones under the manslaughter statute.
However, under the sentencing guidelines of La.Code Crim.P. art. 894.1, we find that the twenty-year sentence imposed by the trial court upon Dwain Jones was excessive as more fully explained below.
Excessiveness of Sentence
The defendant contends that the trial court erred in imposing an unconstitutionally excessive sentence in light of the defendant’s youth, his lack of prior criminal history, and his limited involvement in the death of his daughter. We agree.
La. Const. Art. I, § 20 guarantees that “[n]o law shall subject any person *602 ... to cruel, excessive, or unusual punishment.” Louisiana jurisprudence provides that a sentence which falls within the statutory limits may nevertheless be excessive under the circumstances of the case. State v. Sepulvado, 367 So.2d 762 (La.1979). To constitute an excessive sentence, the reviewing court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is therefore nothing more than a needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981). We find in reviewing the record and |sthe thirty-two aggravating and mitigating factors listed for consideration in the sentencing guidelines of La. Code Crim.P. art. 894.1, that the mitigating factors outweigh the aggravating factors in the present case.
Moreover, we find that a twenty-year sentence upon a young defendant who did not abuse or cause physical harm to his child does not measurably contribute to acceptable penal goals and is a needless imposition of pain and suffering. It is true that, under Article 894.1(B)(2), Dwain knew or should have known that the twenty-two month old Aspen was particularly vulnerable and incapable of resistance to Amy’s abuse due to Aspen’s extreme youth. It is also true under Article 894.1(B)(8) that Dwain neglected Aspen in part to conceal Amy’s abuse.
However, under numerous other factors of Article 894.1, the record discloses that the very immature defendant, who fathered Aspen when he was only seventeen, did try to protect Aspen, caring for her and fighting with Amy over the abusive events he witnessed. His conduct of neglect and omission was not deliberately cruel; he did not use violence or cause others to use violence against Aspen; he did not act in concert with Amy to hurt Aspen; he was not involved in similar offenses; he had no history of prior delinquency or criminal activity; he did not contemplate that his conduct would cause serious harm; his conduct is not the result of circumstances likely to recur; he is likely to respond affirmatively to any probationary treatment; and an extensive imprisonment may cause a hardship to a dependent.
More specifically, in response to the trial judge’s pointed question regarding whether Dwain’s neglectful conduct was likely to recur, Dr. Ceeile Guin, an expert in forensic social work and a social worker in the field of criminal justice and corrections, testified as follows:
|flNo, because I think what he did was based on ignorance and fear. He did not know what to do about his relationship with this young woman and the baby. He knew on some level that the baby was being abused. I think that he’s probably very well educated, now, on indicators of sick ... when something is wrong with the baby, what to do about it.... I just don’t think he knew what to do. So I don’t think that — I do not feel that he was abusing the baby. There is nothing to indicate that he was doing that .... his family is a good, reputable, honest family.... People that abuse babies do not have clean backgrounds .... they have some background of violence in their home or ... you read their school records and they were beating up other kids or bullying other kids. And there is just none of that there.... I tend to believe him because of the objective records. So if you’re asking if it’s likely to recur, I would hope that he wouldn’t get involved in a bad relationship with another woman again. But I do not think that he would see a baby being abused and not do something about it again.
Additionally, Dr. Guin testified that Dwain came from a family with a good work ethic, which was instilled in him, and that he was a prime candidate for rehabilitation. She testified to his propensity for care taking, stating that:
*603 ... I think what he chose to do was take care of the baby himself ... he did a lot of maternal taking care of the baby, things that we normally think a mom would do. That’s what he did. And he fought with Amy, and ... threatened her that she could not hit the child again.... He was scared to death that she was going to run off with the baby or that the baby was going to wind up in the custody of the state .... there’s no doubt that that was ... a very major part of it .... another connecting thing ... is that she has had another baby since she was incarcerated. And he believes it’s his baby; his family believes it is. His mom has seen the baby once.... Amy, evidently, gave the baby to an employee of the prison. And he’s — we’re trying to help them raise the funds to get the test through the Catholic church ... to see if it is his baby ... things like that ... make me believe that he really did love the baby and wanted the baby and wants the next baby, it’s his sincere desire to have the baby.
In addition to the testimony of Dr. Guin, the trial court heard testimony from Dwain’s half sister, Hope Landry, who grew up with Dwain and later had him baby-sit for her son, Tyler. Ms. Landry stated that:
Dwain came to live with me in ’95 ... maybe ’96.... When Tyler was first born, he started babysitting.... Dwain took all Imthe responsibilities .... when Tyler would cry during the night ... Dwain would get up; Dwain would feed the baby. Dwain was with me when I had the baby. He stayed overnight with me at the hospital.... He was just so anxious to see this child. From the time Tyler came home ... that’s his nephew, but he would do like Tyler was his son. Tyler would go everywhere with him. He’d stroll Tyler.... I trusted him. It was just Dwain and Tyler in the apartment. When I would come home [from work], my apartment was clean. Dwain cleaned everything; my baby was dressed nice. My baby’s hair was fixed.... He was fed.
Ms. Landry indicated that Tyler had visited Dwain in prison and sat and talked to him on the phone most of the time during their visits. In response to the court’s questions as to whether Dwain would be missed, Ms. Landry replied, “Definitely.. I need him home now, in fact. There are so many things that I could go to and talk to him.”
In response to the trial judge’s question regarding whether he would act the same way again, Dwain himself testified that:
No, sir, I would have come to my senses. I would have stood up ... got custody of my child and left Amy and just had to deal with the fact. But I was in love; I didn’t want to leave her and I didn’t want her to leave me.... And I didn’t want my child to be taken away from me.
Indeed, the trial court specifically found that “[b]ased upon the evidence presented, Dwain’s criminal conduct was the result of circumstances unlikely to happen again.”
Hence, based upon the foregoing testimony, and based upon the mitigating criteria in the sentencing guidelines of La.Code Crim.P. art. 894.1, we find that twenty years is an excessive sentence, and should be reduced.
Ten-Year Minimum Imprisonment Not Applicable
We also find that the ten-year minimum imprisonment without probation or suspension of sentence is not applicable to the defendant in this case. More specifically, the manslaughter statute, La.R.S. 14:31, provides:
lnB. Whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years. However, if the victim was killed as a result of receiving a battery and was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, *604 for not less than ten years nor more than forty years.
(Emphasis added).
Battery is defined at La.R.S. 14:33 as the intentional use of force or violence upon the person of another. The record reveals, and the court clearly articulated, that there was absolutely no evidence that Dwain abused Aspen. We find under the narrow facts of this case, that because Dwain did not commit a battery or deliberately allow the perpetuation of battery, he is not subject to the manslaughter statute’s ten year minimum sentence without probation or suspension of the sentence.
Error Patent
We further find, in reviewing the record for errors patent under La.Code Crim.P. art. 920, that the trial court did not personally inform Dwain Jones of the nature of the charge to which he was pleading. The trial court asked him if his attorneys had explained to him the meaning of manslaughter and whether he understood that explanation. He answered “yes” to both questions. However, the trial court did not personally explain the elements of manslaughter or the penalties under the manslaughter statute. La.Code Crim.P. art. 556.1(A)(1), effective August 15, 1997, provides that before accepting a guilty plea, the court must address the defendant personally in open court and inform him of, and determine that he understands, the nature of the charge and any minimum or maximum penalties provided by law. Thus, the trial court did not satisfy the requirements of Article 556.1(A)(1), which incorporates mandatory language and constitutional references. That error alone is reversible error.
|12We agree with and adopt the cogent reasoning in State v. Reynolds, 98-170 (La. App. 5 Cir. 7/28/98); 716 So.2d 485, writ granted, 98-2281 (La.1/15/99); 735 So.2d 643, decision vacated, 98-2281 (La.4/16/99); 733 So.2d 1191, (vacated pursuant to defendant’s affidavit expressing that he wished to stand by his guilty pleas), which found that the protection of substantive rights of defendants requires a more complete effort on the part of the courts, the state, and the defense counsel to ensure that the defendant is informed of his rights. This requires that he understand the elements and the penalty exposure of the charge to which he pleads.
State ex rel. Halvorsen v. Blackburn, 388 So.2d 806 (La.1980) determined that an admission of guilt cannot be considered voluntary in the constitutional sense if the admission does not encompass every element of the crime. The United States Supreme Court found in Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) that a plea cannot be voluntary or constitute an intelligent admission of guilt unless the defendant receives real notice of the true nature of the charge against him, which is the first and most universally recognized requirement of due process.
IV.

CONCLUSION

Based upon the foregoing reasons, we reverse the twenty-year prison sentence imposed by the trial court upon Dwain Michael Jones, and remand the case for resentencing in accordance with the sentiments expressed in this opinion.
REVERSED AND REMANDED FOR RESENTENCING.
PICKETT, J., DISSENTS.