778 So.2d 1131 (2001)
STATE of Louisiana
v.
Dwain Michael JONES.
No. 99-K-2207.
Supreme Court of Louisiana.
January 29, 2001.
Richard P. Ieyoub, Attorney General, Eddie Knoll, District Attorney, David E. Lafargue, Assistant District Attorney, Counsel for Applicant.
Louisiana Appellate Project, Paula C. Marx, Counsel for Respondent.
*1132 PER CURIAM:[*]
In this prosecution for first degree murder following the death of respondent's 22-month-old daughter, Aspen, respondent entered a guilty plea to manslaughter, La. R.S. 14:31, and received a sentence of 20 years imprisonment at hard labor. Because manslaughter is one of the enumerated crimes of violence in La.C.Cr.P. art. 2(13), respondent must serve nearly all of his term without eligibility for parole. La. R.S. 15:574.4(B). Although, as a first felony offender, respondent would otherwise remain eligible for diminution of sentence for good behavior ("good time"), cf. La. R.S. 15:571.3(C)(1)(q), the trial court exercised its discretion under La .C.Cr.P. art. 890.1(B) and denied respondent good time altogether. On appeal, the Third Circuit found respondent's sentence excessive because it appeared that the trial court had disregarded a strong showing of mitigating circumstances. State v. Jones, 99-0122, p. 8 (La.App. 3rd Cir.6/23/99), 742 So.2d 597, 602 ("[T]he record discloses that the very immature defendant, who fathered Aspen when he was only seventeen, did try to protect Aspen, caring for her and fighting with [her mother] Amy over the abusive events he witnessed. His conduct of neglect and omission was not deliberately cruel; he did not use violence or cause others to use violence against Aspen; he did not act in concert with Amy to hurt Aspen ... he did not contemplate that his conduct would cause serious harm...."). The court of appeal also found that the trial judge had failed to satisfy the requirements of La.C.Cr.P. art. 556.1(A)(1) that he personally explain the nature and elements of the charge to respondent during the plea colloquy and advise him with regard to the penalties carried by the offense of manslaughter. "That error," the court of appeal observed, "alone is reversible error." Jones, 99-0122 at 11, 742 So.2d at 604. However, the court of appeal refrained from setting aside respondent's conviction and vacated only his sentence, remanding the case to the district court for resentencing. Jones, 99-0122 at 12, 742 So.2d at 604. We granted the state's application to review the decision below because the court of appeal erred in two respects.
First, respondent challenged only his sentence in the court below, not his underlying conviction. In State v. Guzman, 99-1528, p. 6 (La.5/16/00), 769 So.2d 1158, 1162, this Court overruled its prior decision in State v. Godejohn, 425 So.2d 750, 751 (La.1983), and made clear that a guilty plea colloquy is not part of the record for purposes of error patent review. See also State v. Filer, 00-0073 (La.6/30/00), 762 So.2d 1080. A reviewing court may therefore not enforce the requirements of La.C.Cr.P. art. 556.1 by vacating sua sponte the guilty plea of a defendant who makes no complaint on appeal about his conviction. In the present case, the court of appeal implicitly recognized the danger of vacating a guilty plea to a substantially reduced charge when it refrained from setting aside respondent's conviction for manslaughter and returning him to face the original charge of first degree murder, a capital offense, even though it had found reversible error in the trial judge's failure to comply with La. C.Cr.P. art. 556.1(A). See Guzman, 99-1528 at p. 3, n. 3, 769 So.2d. at 1162 ("We note that treating [a] [deficiency in the plea colloquy required by art. 556.1] as an error patent ... produces undesirable consequences.... [T]his Court has recently encountered cases in which an intermediate court reversed a conviction, arising from a plea bargain, based on an error that the defendant deliberately chose not to raise because the defendant was satisfied with the plea bargain.") (citing State v. Reynolds, 98-2281 (La.4/16/99), 733 So.2d 1191)).
*1133 The court of appeal also erred in setting aside respondent's sentence as excessive. After considering all of the evidence presented below, the trial court found as a factual matter that respondent, who met his daughter's mother in Michigan after moving there in 1993 to live with his father following the separation of his parents, had inflicted none of the injuries on his daughter in a pattern of abuse begun by the mother in Michigan where the victim was born in the fall of 1995. Given that factual premise, another trial judge may have weighed differently respondent's immaturity and lack of experience in coping with the circumstances in which he found himself.
However, the question on sentence review is not whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959. In the present case, the evidence showed that in the summer of 1997 respondent returned to Louisiana with his daughter and her mother, moving into the home of respondent's parents in Avoyelles Parish after they reconciled, just ahead of the Michigan child protection authorities who had initiated an investigation into alleged abuse involving a head injury to the child. Four months later, the victim died as the result of multiple hemorrhages in her brain. In his statements to the police after his daughter's death, and in his testimony at the hearing conducted by the court before imposing sentence, the defendant acknowledged that he had been aware in the days before his daughter's death that she was gravely ill, yet did not seek medical intervention because he feared that he would either lose custody of the child or face arrest for the injuries inflicted by the mother. Respondent specifically recalled two incidents over the summer of 1997 in which the mother threw her daughter to the grounds violently and that after the last occasion, he had observed the victim walk around haphazardly as if she were dizzy, stare at her toys with a blank affect, and roll her eyes back into her head. Despite these signs of neurological impairment, neither parent took any action until the afternoon of September 2, 1997, when the victim, who had suffered fresh bruises and cuts around her eyes and abrasions to her legs apparently after spending the morning alone with her mother, began experiencing respiratory distress, a symptom of brain stem injury. At last, the mother called emergency services and the victim, in critical condition, was rushed to the hospital in Bunkie, Louisiana, and then immediately transported by air to the LSU Medical Center in Shreveport. She died the next day.
According to the physicians who treated her in Bunkie and Shreveport, the victim had long passed the point of recovery by the time medical intervention occurred and would have remained helpless and bedridden even if she had somehow survived. At the hearing conducted on respondent's pre-trial motions, the parish coroner testified that the number of hemorrhage foci in the victim's brain and their differing ages excluded the possibility of accidental injuries. "In all probability," the coroner testified, "this child was in an abusive state for some time, which very possibly could have had a certain amount of intercranial bleed for some time; and something happened on [September 2, 1997] that rolled it over from a minimal bleed or a moderate bleed to a massive bleed, with the end result being death."
Cross-examination of respondent at the sentencing hearing ended with the following exchange concerning the days immediately before the victim's death:
Q. You knew she should have gone to the hospital.
A. Yes, sir.
Q. You knew that [the mother] was the one who inflicted that damage upon your child?
A. Yes, sir.

*1134 Q. [Y]ou were the only one that could have saved that child.... You could have prevented that child from being physically abused to the point of her death; is that correct?
A. Yes, sir.
For the trial judge, who had initially determined on the basis of all available information to impose a light sentence because it appeared that respondent "simply was negligent in his parenting of Aspen...," this exchange became the measure of respondent's moral culpability for the "abandonment of his child in her greatest hour of need." Despite his guilty plea to manslaughter, respondent argued in the court of appeal that for purposes of evaluating the severity of the punishment imposed by the trial court his crime was more appropriately viewed as negligent homicide, a much less serious offense carrying a maximum sentence of five years imprisonment at hard labor. La.R.S. 14:32. However, the legislature has recently added Second Degree Cruelty to Juveniles to the Criminal Code, La. R .S. 14:93.2.3, 1999 La. Acts 191, defining the offense as "the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child." The crime is punishable by a maximum term of imprisonment of 40 years at hard labor, the same range provided for the crime of manslaughter. This recent addition to the Criminal Code reflects the seriousness with which the legislature requires courts to consider the criminal neglect of children which produces serious bodily injury or significant neurological consequences even when that conduct does not bring about the death of the child. Second Degree Cruelty to Juveniles was not a crime when the events which culminated in the victim's death occurred in the present case, but the legislature's subsequent changes in pertinent law remain a relevant sentencing consideration within the limits fixed by law at the time of the commission of the crime. State v. Robinson, 423 So.2d 1053, 1063 (La.1983). While the trial court's factual determinations preclude a finding in the present case that respondent inflicted the blows that caused the victim's injuries, the evidence presented at sentencing provided a rational basis for the court to conclude that respondent's deliberate decision not to seek medical attention for the gravely impaired victim contributed to the neurological crisis which ultimately took her life. In this context, and given respondent's guilty plea to a crime of violence which rendered him ineligible at the outset for suspension of sentence and probation, La.C.Cr.P. art. 893(A), we cannot say, even considering the severely curtailed opportunities for early release, that the trial court abused its broad sentencing discretion by imposing a grossly disproportionate term of imprisonment. State v. Bonanno, 384 So.2d 355, 358 (La.1980).
Accordingly, the decision of the court of appeal is reversed and this case is remanded to the district court for execution of sentence.
JUDGMENT OF COURT OF APPEAL REVERSED; CASE REMANDED.
MURRAY, J. Ad Hoc, dissents and assigns reasons.
CALOGERO, C.J., dissents for the reasons assigned by MURRAY, J. Ad Hoc.
MURRAY, Judge Ad Hoc, Dissenting.
The majority is correct that the record herein provided a rational basis for the trial court's determination that Dwain Jones' decision not to seek medical attention for his daughter, Aspen, contributed to the neurological crisis that ultimately caused her death. He was aware that Aspen had a head injury while the couple was living in Michigan, and he was not satisfied with Amy's explanation of how that injury occurred. He also saw Amy throw his baby to the ground on two occasions, and knew that the child was not *1135 herself after the second occasion. Dwain Jones should have done something to protect Aspen from her mother, and should have sought medical attention for the child.
However, the trial court also found that Dwain Jones did not contemplate that his failure to act would cause the child serious harm, and that his criminal conduct resulted from circumstances that were unlikely to recur. The record supports both of these findings. In fact, the Avoylles coroner examined Aspen and ordered full-body x-rays, including x-rays of the child's head, just two months prior to Aspen's death. Based on the examination and x-rays, he found nothing that would warrant intervention or follow-up. Additionally, Dwain's mother saw Aspen in the days between the second incident and the morning that the child suffered the blows that resulted in her hospitalization and ultimate death[1]. Although she had raised three children, she noticed nothing wrong with the child. It, therefore, was not unreasonable for the court to conclude that Dwain did not contemplate the serious consequences that could result from his inaction.
In light of those mitigating circumstances, I believe that sentencing Dwain Jones to twenty years violates the constitutional prohibition against excessive sentences provided by Article 1, Section 20. I do not attempt to minimize the seriousness of Dwain Jones' crime or ignore the fact that an innocent child is dead because he did not protect her. However, as this Court noted in State v. Sepulvado, 367 So.2d 762 (La.1979), a sentencing judge does not "possess unbridled discretion to impose a sentence within statutory limits, regardless of mitigating facts." Id. at 770. A trial court's sentencing discretion should be exercised to impose sentences that are appropriate to the individual circumstances of the offense as well as to the offender.
The trial court herein assigned reasons for sentencing. In those reasons, it stated that the most important factor in its decision to impose a twenty year sentence was the case of State v. Sepulvado, 655 So.2d 623 (La.App. 2d Cir.1995), which it found to be very similar to Dwain Jones' situation.
Mrs. Sepulvado, like Dwain Jones, was found to have failed to aid her child in his time of greatest need, and, as a consequence, her child died. Id. at 629. That, however, is the only similarity between the circumstances of the offense or the offender in the two cases. Unlike Dwain Jones, Mrs. Sepulvado, who received a twentyone year sentence for manslaughter in connection with the death of her six-year old son, actually physically abused her child. Although her actions paled in comparison to those of her husband, she admitted hitting her son, pulling his hair and striking him in the head several times. Id. at 625. In addition, she watched her husband, over a three day period,[2] tie a rope around her son's neck and threaten to hang him, beat him, put his head in the toilet and flush, refuse to feed him, kick him from one room to another, and, finally, put him in a tub of scalding water. Id. at 625-626. The circumstances of the offense and the offender in Sepulvado cannot be equated with Dwain Jones and the circumstances of this case.
Because Dwain Jones did not personally physically abuse his daughter or contemplate that his failure to act to protect her would cause her serious harm, and because his criminal conduct is unlikely to recur, sentencing him to twenty years serves no purpose other than the needless infliction of pain and suffering. I, therefore, agree *1136 with the court of appeal that the sentence was an abuse of the trial court's discretion.
NOTES
[*] Patricia Rivet Murray, Associate Justice Ad Hoc, sitting for Knoll, J., recused.

James C. Gulotta, Justice Pro Tempore, sitting for associate justice, Harry T. Lemmon.
[1] The trial court found that the specific injuries that caused the child to be hospitalized on September 2 did not result from the incidents in which Dwain saw Amy throw the child.
[2] This three day period of abuse was the culmination of a pattern of gradually escalating abuse inflicted upon the child by Mr. Sepulvado.