NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 13-493


STATE OF LOUISIANA

VERSUS

MONIQUE RENEE HOUSTON


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 6895-07
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and Billy Howard Ezell, Judges.


**AFFIRMED.**

**John Foster DeRosier**
**District Attorney**
**Fourteenth Judicial District Court**
**Karen C. McLellan**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Bruce Gerard Whittaker**
**Capitol Defense Project**
**829 Baronne Street**
**New Orleans, LA 70113**
**(504) 595-8965**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Monique Renee Houston**

**EZELL, Judge.**

On March 8, 2007, the Defendant, Monique Houston, and co-defendant, Travis Holmes, were charged by grand jury indictment with the second degree murder of Defendant-Houston's three-year-old son, a violation of La.R.S. 14:30.1(A)(2)(b). On April 9, 2007, the Defendant entered a plea of not guilty and requested a trial by jury. On May 4, 2009, the State amended the charge against the Defendant to manslaughter, and the Defendant entered a guilty plea to the amended charge.[1] The trial court ordered a pre-sentence investigation report and set sentencing for a later date. On July 15, 2009, the trial judge sentenced the Defendant to thirty years with the Department of Corrections without benefit of probation or suspension of sentence. Thereafter, on August 14, 2009, the Defendant filed a Motion to Reconsider Sentence, which was denied by the trial court without a hearing.

On May 25, 2011, the Defendant filed an application for post-conviction relief, asking the trial court to reinstate her right to appeal her conviction and sentence. In an order signed June 10, 2011, the trial court directed the Defendant to submit a writ application to the third circuit on or before July 15, 2011 and appointed the Louisiana Appellate Project to represent the Defendant in her appeal. Thereafter, on November 9, 2012, the Defendant (through the Louisiana Appellate Project) filed an Amended Order and Motion for Appeal, requesting the previous order be amended to delete that portion ordering the Defendant to submit a writ application. Instead, the Defendant asked the trial court to grant her an out-of-time appeal. In response, the trial court granted the Defendant an out-of-time appeal.

---

[1] On March 30, 2009, co-defendant Travis Holmes entered a guilty plea to the amended charge of manslaughter and received a 40-year sentence.

The Defendant is now before this court, alleging one assignment of error as to the excessiveness of the sentence imposed. For the following reasons, we affirm the Defendant's sentence.

## FACTS

The following factual basis was submitted by the State in support of the Defendant's guilty plea:

> Your Honor, if called to trial the State would show that this defendant was the mother of Jaylin Houston (phonetic spelling) who was born on November 18, 2003 and who died on December 7 of 2006 at the age of three years old. This child died of blunt head force trauma and that was evident by the amount of blood that was present in his skull during the autopsy, as well as an examination of his body revealed a number of bruises, a missing layer of skin on his buttocks, also some injuries that were matched up to the angle shape, Dr. Welke was able to match up to a clothes hanger. He had a number of injuries in various stages of healing.
>
> At the time this defendant and her boyfriend were living together. She gave varying stories as to how the child's injuries had occurred and what had caused his death. Later her boyfriend did confess that he did beat the child. We learned from her older child that the child was beaten almost daily because of potty training issues and that this defendant did nothing to stop that and was present, according to her child who was four at the time, during a number of these beatings. She was present when the blunt head force trauma was executed on this baby by her boyfriend; and all of this did occur in Calcasieu Parish.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by staff for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

The Defendant alleges that the sentence she received is excessive.

The law is well settled concerning the standard to be used in reviewing excessive sentence claims:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331.

. . .

[E]ven when a sentence falls within the statutory sentencing range, it still may be unconstitutionally excessive, and in determining whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has suggested that several factors may be considered:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061.

*State v. Decuir*, 10-1112, pp. 11-13 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, 790-91. (first and third alteration in original).

The Defendant pled guilty to the reduced charge of manslaughter of her three-year-old son. The penalty range for such an offense is a minimum of ten years to a maximum of forty years at hard labor, without benefit of probation or suspension of sentence. La.R.S. 14:31(B). The Defendant was sentenced to thirty years at hard labor.

At the sentencing hearing, both the State and the defense stated that they were given an opportunity to review the pre-sentence investigation report. The trial court then recited the following:

> I believe Ms. Houston is a 21-year-old female born September the 8th of 1986, highest level of education was tenth grade, currently a resident of Calcasieu Parish, past work history and businesses indicated that she had worked in the fast food industry, as well as at one time at a child care facility.
>
> On May the 8th the Court noted that she was represented by retained counsel, Mr. Harold Thibodeaux. She entered a guilty plea to the charge of manslaughter under violation of 14:31, specific penalty provisions indicating involving [sic] a battery of a child less than ten years old, as far as the punitive portions, a minimum of ten and maximum of 40 without benefit of probation or supervision. . . .
>
> Anyway, it is also noted that that is a crime of violence as designated under 14:2 Section (b) (4). The Court did not impose a sentence on May the 8th but did request that a report be submitted back to the Court and it was received July the 10th of 2009 by an agent of Probation & Parole.

After affirming that neither the State nor the defense had an objection to the information recited above, the trial court noted the following:

> In conjunction, the Court has received a number of certificates of accomplishments that Ms. Houston has been involved with while at the correctional center, specifically a HART certificate, Domestic Violence Anger Management Program, G.E.D. certification, which I commend you for taking these matters, 40 days of Purpose, Alpha

4

Leadership Certificate, Search for Significance, a baptism, ministry training, home bible study, Gospel Echoes and Gospel Express Program; in addition, some letters of support from various family members were received, as well as letters from the defendant herself.

When the trial court asked the State if it had a specific recommendation with regard to the sentence, the State recommended the maximum sentence. Defense counsel, however, requested a sentence of ten years, noting that co-defendant Holmes (the one who committed the physical abuse) received a sentence of forty years. Defense counsel argued that the Defendant did not condone the abuse and had tried to "rein" in co-defendant Holmes by seeking help from his mother. The Defendant personally addressed the court as follows:

> I want to start by saying that I am sorry for not being honest. I was just so afraid, but I never harmed my children. I was always a mother who loved my children. And, honestly, since I have been incarcerated I look at life in a whole different perspective. I'm not saying that lying was right. All I just want is to ask you to have mercy on me. I'm sorry, Your honor.

After hearing the arguments and statement by the Defendant, the trial court addressed the sentencing guidelines applicable to the case. First, the trial court noted that because the Defendant was a first-time offender, there was not an undue risk that she would commit another offense while on probation. The trial court also noted the range of the sentence (a minimum of ten years and a maximum of forty years) as well as the heinous nature of the offense. As for aggravating factors, the trial court noted that the Defendant allowed her children to be left in an environment with co-defendant Holmes; that the Defendant used her position as her children's mother to leave them at risk of death or great bodily harm; that the Defendant acquiesced in the various beatings and punishments by failing to take any protective action for the children; and that the Defendant initially tried to cover up the actions of her boyfriend. As for mitigating factors, the trial court noted that

5

the Defendant has no prior criminal history and that the Defendant eventually came forward with the truth.

The trial court then ordered the Defendant to serve a sentence of thirty years with the Department of Corrections, without benefit of probation or suspension of sentence. The trial court also advised the Defendant of her good time and parole eligibility. Finally, the trial court told the Defendant the following:

> The other thing, and I still don't know if you get it, Ms. Houston, because there was a statement made that, "I never harmed the children;" and to leave them in that environment, I don't know how much harm that could be, nothing great. You picked Mr. Holmes over your children, and for that you will pay the price.

The Defendant argues that the thirty-year sentence she received is excessive considering the fact that she was "a mere passive observer to the criminal acts of her paramour and co-defendant, Travis Holmes." Although appellate counsel acknowledges that the Defendant's conduct is deserving of punishment, counsel argues that the Defendant's conduct is not deserving of a thirty-year sentence. Appellate counsel notes that the thirty-year sentence is within the high end of the available penalty range for manslaughter. Reciting the arguments raised by trial counsel, appellate counsel notes that this case was more appropriately a case of negligent homicide, that the Defendant was only twenty years old when the crime occurred, that the Defendant had three small children in her care, and that no allegation had been made that the Defendant herself was physically abusive. Also, as noted by the sentencing court, appellate counsel asserts that the Defendant was a first-time offender and "that her crimes were essentially sins of omission."

In response, the State asserts that the Defendant's actions render her guilty as a principal to the crime committed by her co-defendant. [2] Additionally, the State argues that the Defendant failed to shield and protect her child from abuse, specifically noting the coroner's report that the victim's injuries and scars appeared to have occurred over various time intervals. The State further alleges that the Defendant initially lied to protect her boyfriend, telling the police that the victim fell and hit his head on a concrete step. Only after her four-year-old son told police that he saw the Defendant's boyfriend beating the victim, did the Defendant "finally admit[] to the police that she heard her boyfriend beating her son behind closed doors in the bathroom." The State further asserts:

> She heard a loud thud and *only then* did she go in the bathroom. She saw Jalynn lying motionless in the bathtub on his back. She believed that her boyfriend either threw or dropped Jalynn in the tub. She told the police she picked him up, cleaned him up, and "tried to get him to come around." She noticed that his speech was slurred, so she put him in the bed with her. She claimed that she got up sometime later to get water and when she came back, Jalynn was not breathing.
>
> Thus, the defendant heard her child being abused and did nothing. The defendant not only allowed her boyfriend to abuse her child, but when he finally killed her child, she did not call the police or seek help. She merely cleaned Jalynn up and put him to bed. The defendant and her boyfriend then lied to law enforcement and fabricated a story that would protect her boyfriend. It was not until her other son told the truth was she forced to admit that she allowed her boyfriend to kill her son. This is not a crime of omission; it was her decision to protect her boyfriend rather than seek justice for her son.

In a factually similar case, the Louisiana Supreme Court upheld a twenty-year sentence imposed upon a nineteen-year-old defendant for the manslaughter of

---

[2] In brief, the State mentions the fact that the Defendant's motion to reconsider sentence was very vague and implies that this court could find it was insufficient to preserve appellate review. The State acknowledges, however, that the Defendant would still receive a "bare excessiveness" review and addresses the Defendant's excessiveness claim. Since the State does not substantiate its argument on this issue and concedes that the Defendant is entitled to an excessiveness review, we have proceeded with a review of the Defendant's sentence for excessiveness.

his twenty-two-month-old daughter. *State v. Jones*, 99-2207 (La. 1/29/01), 778 So.2d 1131. In upholding the sentence, the supreme court reversed this court's finding of excessiveness. On appeal, this court found the sentence was excessive in light of the defendant's youth and in light of the fact that the defendant "did not physically harm his daughter but was negligent in failing to prevent abuse by the mother and in failing to seek medical assistance for the child." *State v. Jones*, 99-122, p. 1 (La.App. 3 Cir. 6/23/99), 742 So.2d 597, 599. Reversing this court's decision, the supreme court stated the following:

> The court of appeal also erred in setting aside respondent's sentence as excessive. After considering all of the evidence presented below, the trial court found as a factual matter that respondent, who met his daughter's mother in Michigan after moving there in 1993 to live with his father following the separation of his parents, had inflicted none of the injuries on his daughter in a pattern of abuse begun by the mother in Michigan where the victim was born in the fall of 1995. Given that factual premise, another trial judge may have weighed differently respondent's immaturity and lack of experience in coping with the circumstances in which he found himself.

> However, the question on sentence review is not whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion. *State v. Cook*, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959. In the present case, the evidence showed that in the summer of 1997 respondent returned to Louisiana with his daughter and her mother, moving into the home of respondent's parents in Avoyelles Parish after they reconciled, just ahead of the Michigan child protection authorities who had initiated an investigation into alleged abuse involving a head injury to the child. Four months later, the victim died as the result of multiple hemorrhages in her brain. In his statements to the police after his daughter's death, and in his testimony at the hearing conducted by the court before imposing sentence, the defendant acknowledged that he had been aware in the days before his daughter's death that she was gravely ill, yet did not seek medical intervention because he feared that he would either lose custody of the child or face arrest for the injuries inflicted by the mother.

>     . . . .

> Despite his guilty plea to manslaughter, respondent argued in the court of appeal that for purposes of evaluating the severity of the

punishment imposed by the trial court his crime was more appropriately viewed as negligent homicide, a much less serious offense carrying a maximum sentence of five years imprisonment at hard labor. La.R.S. 14:32. However, the legislature has recently added Second Degree Cruelty to Juveniles to the Criminal Code, La.R.S. 14:93.2.3, 1999 La. Acts 191, defining the offense as "the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child." The crime is punishable by a maximum term of imprisonment of 40 years at hard labor, the same range provided for the crime of manslaughter. This recent addition to the Criminal Code reflects the seriousness with which the legislature requires courts to consider the criminal neglect of children which produces serious bodily injury or significant neurological consequences even when that conduct does not bring about the death of the child. . . . While the trial court's factual determinations preclude a finding in the present case that respondent inflicted the blows that caused the victim's injuries, the evidence presented at sentencing provided a rational basis for the court to conclude that respondent's deliberate decision not to seek medical attention for the gravely impaired victim contributed to the neurological crisis which ultimately took her life. In this context, and given respondent's guilty plea to a crime of violence which rendered him ineligible at the outset for suspension of sentence and probation, La.C.Cr.P. art. 893(A), we cannot say, even considering the severely curtailed opportunities for early release, that the trial court abused its broad sentencing discretion by imposing a grossly disproportionate term of imprisonment. *State v. Bonanno*, 384 So.2d 355, 358 (La.1980).

*State v. Jones*, 99-2207, pp. 3-6 (La. 1/29/01), 778 So.2d 431, 433-34.

In *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283, the supreme court stated, "this Court has repeatedly emphasized that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." Considering this repeated admonition by the supreme court, the benefit the Defendant received by pleading guilty to a lesser charge, the factors cited by the trial court, and the factors considered by the supreme court in *Jones*, the trial court did not abuse its discretion in imposing a thirty-year sentence in this case.

9

**DECREE**

The sentence imposed by the trial court is not excessive and is hereby affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLCIATION.  Uniform Rules─Courts of Appeal.  Rule 2─16.3.