STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1339

STATE OF LOUISIANA

VERSUS

TRISTAIN D. BARTLEY

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 10-1971
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**M. Bofill Duhé**
**District Attorney**
**Angela B. Odinet**
**Assistant District Attorney**
**415 Main Street**
**St. Martinville, Louisiana 70582**
**(337) 394-2220**
**Counsel for Appellee:**
    **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 2806**
**Monroe, Louisiana  71207-2806**
**(318) 855-6038**
**Counsel For Defendant/Appellant:**
**Tristain D. Bartley**

**KEATY, Judge.**

Defendant, Tristain D. Bartley, appeals his sentence for manslaughter. For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

Chiquita Bell left her eighteen-month-old son, Jordan Bell, with Defendant while she went to the store. When she returned, Jordan had second degree burns over his entire body. The lines of demarcation on the body from the burnt to preserved skin showed that Jordan's hands and feet were held while he was submerged in scalding water. Jordan died as a result of his injuries.

Defendant was indicted on November 17, 2010, for first degree murder, a violation of La.R.S. 14:30. Pursuant to a Certificate Outlining Felony Plea Agreement dated February 14, 2014, the State agreed not to charge Defendant as a habitual offender in exchange for Defendant "plead[ing] OPEN ENDED with a minimum of 10 years and a maximum of 25 years hard labor" to manslaughter, a violation of La.R.S. 14:31. The outline also contains the hand-written notation, "Best Interest Plea." Defendant accepted the plea agreement on February 18, 2014. At the plea hearing occurring on that same date, and in response to the trial court's question to Defendant regarding how he pled to the charge of manslaughter, he responded, "I plead guilty in my best interest." On April 8, 2014, the trial court sentenced Defendant to twenty years at hard labor without benefit of probation, parole, or suspension of sentence. The trial court ordered that the sentence was to run concurrently with Defendant's sentence in another case. Defendant also received credit for time served.

On April 10, 2014, Defendant filed a motion to reconsider his sentence, arguing that it was excessive "because it imposes needless and purposeless pain

and suffering." Defendant claimed that the trial court failed to "particularize the sentence towards" him and "did not properly consider all mitigating factors." At the July 23, 2014 hearing, the trial court amended the sentence, providing that it was to be served at hard labor without the benefit of probation or suspension of sentence. The trial court affirmed the sentence in all other aspects. Defendant appealed.

On appeal, and in his only assignment of error, Defendant contends that his sentence was unconstitutionally harsh and excessive.

## DISCUSSION

### I.   Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

### II.   Assignment of Error

In his only assignment of error, Defendant contends that his sentence was unconstitutionally harsh and excessive. The standard for reviewing excessive sentence claims was discussed by this court in *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted), as follows:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the

2

trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

In this case, Defendant faced a penalty of up to forty years at hard labor for his manslaughter conviction. La.R.S. 14:31. However, he only received twenty years at hard labor, a sentence falling in the midrange of the statutory limits. *Id.* He agreed to a sentencing range of ten to twenty-five years as part of his plea agreement. Although his twenty-year sentence is not the maximum under the plea agreement, it is toward the upper end of the agreed-upon range.

A penalty may be unconstitutionally excessive even though a penalty falls within the statutory sentencing range. *State v. Cann*, 471 So.2d 701 (La.1985). In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted), this court elaborated on what constitutes an excessive sentence:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

"While the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983). "[M]aximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender." *State v. Quebedeaux*, 424 So.2d 1009, 1014 (La.1982). "The

appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D).

In this case, the record reveals that the trial court received letters from five people asking the trial court to have leniency on him during sentencing. They described Defendant's positive characteristics, including that he was dependable, polite, hard-working, and responsible. Five other witnesses testified at the sentencing hearing, describing Defendant as loyal, good with children, and a positive person.

Defendant testified at the sentencing hearing, stating that he never knew his biological father, his biological mother "was on drugs and stuff," and the Brooks family took him in. He testified that the Brooks family gave him a different kind of life, teaching him how people take care of each other. Defendant subsequently lived with Carla Allen, who testified at the sentencing hearing "that whatever the Brooks taught him, he learned from it because he showed it when he lived with [her]." Defendant testified that he has two daughters, who were three and a half at the time of the sentencing hearing, and that he will miss out "on their whole childhood." He admitted, however, that he took care of them only financially, not physically.

Defendant testified that when he heard of the Jordan's death, he was "devastated." He testified that he felt bad that a life was taken, but being on trial for his life was "just as bad." Defendant testified that he felt "sorry for what happened but [he] had nothing to do with it."

Defendant testified that prior to being incarcerated, he held a variety of jobs. He testified that once incarcerated, he occupied his time by working as a jail

4

trustee and reading books. Defendant testified that upon his release from jail, he plans to move forward with his life and stay out of jail.

After hearing all of the testimony, the trial court noted that Defendant was a thirty-year-old "mature adult." It referred to his criminal history, noting that he had a 2002 conviction for entering and remaining after being forbidden, for which he served jail time and probation. The trial court noted a 2005 conviction where Defendant pled guilty to attempted possession with intent to distribute cocaine and was sentenced to five years at hard labor, which was suspended in favor of five years of supervised probation. The trial court stated that before Defendant completed his probation, Jordan's death occurred in the instant matter. The trial court felt that the 2005 drug conviction did not "coincide too well [with] the character that was given" by the witnesses and found it incongruous that a sincere, kind, hard-working, fun-loving person would attempt to sell cocaine.

The trial court stated that Defendant was originally charged with first degree murder but plea bargained to manslaughter, negotiating his sentence to a ten to twenty-five-year range rather than facing a sentence of life imprisonment arising from the original charge. The trial court stated that "he has already helped himself by his plea bargain and substantially reduced the exposure that he had in this matter." The trial court found that there was an undue risk in Defendant committing another crime if he received a suspended sentence or probation and that Defendant needed correctional treatment provided by commitment to an institution. The trial court did not think probation was "something that brings [Defendant] to comply with the law" since he committed this crime while on probation for his prior offense. It stated that "[a] lesser sentence would depreciate the seriousness of [D]efendant's crime." The trial court noted that this crime

5

required "a serious sentence in order to offset what society requires people to do when they commit serious and violent crimes." It found Defendant's conduct during the commission of the crime "manifested deliberate cruelty to the victim." The trial court held that Defendant knew or should have known of Jordan's vulnerability and incapability to resist because of his young age. It noted that Defendant was in charge of Jordan and used that position to commit the offense against the helpless minor. The trial court held that the offense resulted in the child's death, causing Jordan's family permanent and irreparable loss and suffering.

The trial court considered mitigating factors, including Defendant's young children who needed support and guidance. It noted the loss and suffering felt by Jordan's family and Defendant's family. In an effort to balance the circumstances, the trial court explained that it did not want to "unnecessarily punish [Defendant] more than he ought to be punished[,]" but that Defendant "already received substantial benefit for his guilty plea by the reduction in responsibility." The trial court ultimately sentenced Defendant to "twenty (20) years at hard labor without the benefit of probation[,] parole[,] or suspension of sentence[,]" to run concurrently with the time owed in his 2005 drug possession conviction and sentence. The trial court gave Defendant credit for time served and advised him that he has "a period of two (2) years from the date [his] sentence and conviction become final to apply for [p]ost-[c]onviction [r]elief or an out[-]of[-]time appeal."

In addition to the above testimony, we look to Louisiana jurisprudence to determine "whether the trial court abused its broad sentencing discretion." *State v. Barling*, 779 So.2d at 1042. In *State v. Washington*, 42,849 (La.App. 2 Cir. 12/5/07), 972 So.2d 1203, the defendant was charged with the first degree murder of her two-month-old son and entered a plea bargain agreement to the reduced

charge of manslaughter. Pursuant to the agreement, the sentencing range was limited to ten to twenty years at hard labor. The defendant was a first felony offender with a minor criminal history. Expert opinion differed about the cause of the infant's death. The second circuit upheld her twenty-year sentence.

In another case, the defendant in *State v. Jones*, 99-2207 (La. 1/29/01), 778 So.2d 1131, was charged with the first degree murder of his twenty-two-month-old daughter. He pled guilty to manslaughter and was sentenced to twenty years at hard labor. This court found his sentence excessive because the trial court disregarded "a strong showing of mitigating circumstances." *Id*. at 1132. On a writ of certiorari, the supreme court found that the defendant was aware of his daughter's grave illness but sought no medical treatment for her because he feared that he would lose custody or be arrested for the injuries inflicted by the child's mother. Testimony at the sentencing hearing showed that the defendant knew the mother caused the injuries and the child should have gone to the hospital. Testimony revealed that the defendant was the only individual who could have saved her, but he did not. The supreme court reversed this court and remanded the case to the trial court for execution of the sentence.

Like the defendants in the above cases, wherein the defendants killed a child, Defendant in this matter killed a child. He pled guilty to killing that child. Despite a child dying in his care, Defendant said he did nothing wrong. Defendant benefited tremendously from his plea bargain as his sentence is below the maximum of the term to which he agreed he would be exposed. The trial court clearly delineated its reasons for imposing this twenty-year sentence. Based on the facts of this case, our review of the testimony and evidence, and our review of the factually similar cases of *Washington*, 972 So.2d 1203, and *Jones*, 778 So.2d 1131,

7

we find that the record supports the sentence imposed; thus, Defendant's sentence is not excessive.

## DECREE

Defendant's sentence is affirmed.

**AFFIRMED.**